THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
TED W. ROSSI, Defendant-Appellee.

Second District    No. 80-290

Opinion filed December 17, 1981.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson and Barbara A. Preiner, Assistant State's Attorneys, of counsel), for the People.

Edwin T. Simpson, of Wheaton, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

On September 8, 1979, defendant, Ted Rossi, was arrested and charged with unlawful possession of a controlled substance in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)). The defendant filed a motion to suppress evidence seized as a result of that arrest, and the trial court granted the motion, suppressing a quantity of phencyclidine, PCP, recovered from defendant's wallet. The State appeals.

In the early morning hours of September 8, 1979, Lisle police officer John Hughes stopped a vehicle which was traveling westbound on Ogden Avenue as he noticed its rear taillight was out. He asked the driver, Mr. Tomas, for his driver's license. Tomas did not have one in his possession, and further advised Officer Hughes that he was not the owner of the vehicle, but that the passenger, defendant Rossi, was the owner.

Officer Hughes then walked around to the passenger side of the vehicle, asked the passenger to roll down the window and proceeded to talk to him. Hughes asked the passenger if he knew that his right rear taillight was out, but he testified at the suppression hearing that the passenger "just kind of looked at me." Officer Hughes observed a beer bottle in the rear passenger side of the motor vehicle, and at that time he asked the driver and passenger to exit the vehicle. Hughes noted that the defendant "had a hard time walking" and was "swaying" on his feet. Officer Hughes then asked the defendant if he had his driver's license, but the defendant mumbled incoherently.

Shortly thereafter, another Lisle policeman, Officer Arp, arrived at the scene. Hughes asked Arp to stand with the driver and passenger while he searched the vehicle for other beer. During the search, Hughes discovered a small "roach," and Old Style beer can underneath the driver's seat and a hunting knife with an open sheath. After he found the hunting knife, Officer Hughes advised Arp to search the subjects while he continued searching the vehicle.

Arp conducted a pat down of the driver and passenger after Hughes had removed the bottle of beer and the knife from the interior of the vehicle. Arp did not find a weapon. He then asked the defendant for his name and identity. Arp also received an incoherent response.

The defendant appeared to Arp possibly to be under the influence of narcotics. He advised the defendant that he was going to remove his wallet to which the defendant did not reply. Arp testified that his purpose in removing the wallet from defendant's person was to obtain identification because when they have someone in custody they like to know who they are dealing with and for possibly writing a citation for open liquor. Officer Hughes testified he was considering making an arrest for possession of cannabis and transportation of open liquor.

Arp removed defendant's wallet, opened it and immediately observed a small piece of paper. From previous experience he recognized the paper as a "snow seal," *i.e.*, a specially folded paper used to transport narcotics. Upon opening the snow seal, Arp found light brown powder which he believed to be PCP. He placed the defendant under arrest for possession of a controlled substance. (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b).) The trial court granted the defendant's amended motion to suppress the physical evidence seized, and this appeal followed.

The State contends that police had authority to search the defendant for identification upon his refusal or inability to provide identification. The State theorizes it was not unreasonable to suspect the vehicle may have been stolen where its driver had no driver's license and where the driver said that the defendant and not he owned the vehicle. Additionally, the State contends the search for identification was authorized by section 107.14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 107.14):

"A peace officer after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the stop that the person is committing, is about to commit, or has committed an offense as defined in section 102—15 of this Code and may demand the name and address of the person and an explanation of his actions." (Ill. Rev. Stat. 1979, ch. 38, par. 107—14.)

The State also relies upon cases which have authorized searches of incoherent persons for identification where there was no probable cause to arrest but the defendant's physical condition suggested a potentially serious illness requiring attention. See *People v. Smith* (1970), 47 Ill. 2d 161; *People v. Smith* (1969), 44 Ill. 2d 82; *People v. Gonzales* (1960), 182 Cal. App. 2d 276, 5 Cal. Rptr. 920; *United States v. Hickey* (E.D. Pa. 1965), 247 F. Supp. 621.

The defendant's arguments in support of the trial court's suppression of the evidence are that (a) the search for the wallet for identification was not incident to a lawful arrest and therefore unsupported by probable cause, (b) authority to search the defendant was limited to the *Terry* pat-down for weapons based upon the discovery of the knife in the vehicle (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868), (c) there were no exigent circumstances such as life-saving actions authorizing a search as an exception to the general rule against warrantless searches, and, (d) the defendant, being in a custodial setting, was entitled to *Miranda* warnings prior to the wallet identification search (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612).

At the outset we agree with defendant that there was no evidence introduced to suggest the defendant was *in extremis* or otherwise in need of police assistance for medical reasons. (See *People v. Smith* (1970), 47 Ill. 2d 161.) Neither officer suggested at any time that they had concern for defendant's well-being except that he might fall on the rutted shoulder of the road upon emerging from the vehicle. This concern hardly would be sufficient to warrant the intrusion to the person required by a search for a wallet nor did the officers attribute the search to that reason. *Smith* is inapposite and furnishes no basis for the search in the case at bar.

■■ Defendant argues that the fruits of the search were properly suppressed for the further reason that since the defendant was in custody he was entitled to be made aware of his *Miranda* rights. (*People v. Kennedy* (1978), 66 Ill. App. 3d 267.) We disagree. The PCP discovered in the defendant's wallet was the result of a search and not the result of a statement made by the defendant. The prohibition of *Miranda* relates to statements made by the defendant stemming from custodial interrogation. (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) Defendant Rossi made no statements to the officers whatsoever. In fact it was his incoherence and inability to communicate that precipitated the search for his wallet. Under these circumstances we conclude there is no violation of defendant's rights as set forth in *Miranda*.

Finally, defendant maintains that the search could not be condoned as one incident to arrest as no probable cause existed for an arrest. We disagree. We view this incident as being one where the police had probable cause to arrest the defendant for illegal possession of cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 701 *et seq.*) and transportation of open liquor (Ill. Rev. Stat. 1979, ch. 95½, par. 11—502). See *People v. Zeller* (1977), 51 Ill. App. 3d 935.

The original stop for a defective taillight was a legal stop (Ill. Rev. Stat. 1979, ch. 95½, par. 12—208; *People v. Kelly* (1979), 76 Ill. App. 3d 80) and was determined as such in the findings of the trial court. Defendant does not contest the validity of the stop, the search of the vehicle which led to the discovery of the alleged cannabis "roach" and beverage in open beer containers, or the *Terry* pat-down search of the defendant pursuant to the discovery of the hunting knife during the vehicle search. See *Terry v. Ohio*.

The testimony of Officer Hughes was that upon discovering the knife and the beer in open containers he considered arresting the defendant for unlawful use of weapons and illegal transportation of open liquor. Officer Arp indicated that his search for identification was for a possible citation for possession of cannabis and to learn the identity of the person they had in custody. It is reasonable to conclude from these circumstances, the full development of which appears to have been foreshortened by the discovery of the PCP, that the defendant was in custody as testified to by Officer Arp and would have been advised of his arrest but for the discovery of the PCP.

■■ One of the recognized exceptions to the general rule that warrantless searches are per se unreasonable (*Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514) is a search incident to a lawful arrest (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034). A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the fourth amendment; that intrusion being

lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search. *United States v. Robinson* (1973), 414 U.S. 218, 236, 38 L. Ed. 2d 427, 441, 94 S. Ct. 467, 477.

Furthermore, such a search may be made immediately prior to the arrest and need not take place subsequent to it. (*Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 65 L. Ed. 2d 633, 645-46, 100 S. Ct. 2556, 2564; *People v. De La Fuente* (1981), 92 Ill. App. 3d 525.) In a companion to the heralded case of *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, Mr. Justice Harlan observed in his concurrence in *Peters v. New York* (1968), 392 U.S. 40, 77, 20 L. Ed. 2d 917, 943, 88 S. Ct. 1889, 1909:

> "Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search. If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is *no* case in which a defendant may validly say, 'Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards.' "

See 2 W. LaFave, Search and Seizure §5.4(a) (1978 and Supp. 1981).

■■ Therefore we conclude that the search of the defendant for his wallet for identification was validly made pursuant to the existence of probable cause for an arrest. Prior to the search the police observed defendant in possession of what appeared to be cannabis and open containers containing alcoholic beverage in violation of State statutes which provided probable cause for arrest and a search incident to arrest. The police testified that they and the assistant State's Attorney chose not to charge the defendant with those lesser offenses in light of the discovery of the more serious offense of possession of PCP. Finally, the fact that the arrest of defendant did not take place before the search and was not for the original offenses does not vitiate the existence of probable cause for the search incident to arrest.

The order of the circuit court of Du Page County suppressing the PCP discovered by police while searching the wallet of the defendant is reversed and the cause remanded for further proceedings.

Reversed and remanded.

UNVERZAGT and REINHARD, JJ., concur.