THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
IRVING KOLICHMAN, Defendant-Appellant.

First District (2nd Division)   No. 1—88—1227

Opinion filed July 30, 1991.—Rehearing denied October 3, 1991.

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and Robert F. Heilingoetter, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COCCIA delivered the opinion of the court:

A jury convicted defendant, Irving Kolichman, of illegally possessing 18 tablets of diazepam (Valium) and 38 capsules of secobarbital (Seconal). (Ill. Rev. Stat. 1989, ch. 56½, pars. 1206(e)(2), 1210(c)(8), 1402(b).) The jury acquitted defendant of the original, higher, charge of possession with intent to deliver. (Ill. Rev. Stat. 1989, ch. 56½, pars. 1401(d), 1401(f).) The court sentenced defendant to two years in the Illinois Department of Corrections. On appeal, defendant challenges the trial court's denial of his motion to suppress evidence, claiming the search and seizure were illegal.

On December 4, 1986, Chicago police officer Philip Nelson and his partner were on patrol plainclothed and in an unmarked car. The two officers were assigned to the "Tactical Unit" and their duties included "drug investigations, follow-up investigations on drugs." At 12:40 p.m. Officer Nelson received a radio call concerning an alleged robbery in progress at a 7-Eleven Store located in Chicago.

When Nelson and his partner, Whiteman, arrived at the 7-Eleven Store, a uniformed officer, Richard Holmes, was already present in the store. Three men, including defendant, stood in the back of the store. The store manager reported that no robbery had occurred but he "thought they were going to rob him." At the hearing, when asked if defendant and his two companions had committed any crime at that point, Officer Nelson testified, "They were standing in the store incoherent, unsure of their actions, staggering around ***, [b]ringing suspicion upon them." They were "acting in a suspicious manner." When asked what crime he observed, Nelson replied: "Other than the fact that their actions, and manners, and they were carrying on, none."

Officer Nelson described defendant as "standing with the help of leaning on the counter that was nearby"; his face was "very flush"; "he had drool coming from his mouth"; he responded to Nelson's questions but he was incoherent—Nelson could not understand what defendant was saying. The other two men, Hiller and Blomgren, were acting similarly. (Charges against Hiller and Blomgren were later nolprossed.)

The three officers simultaneously patted down the three men. Officer Nelson's search of defendant produced the 56 pills which are the subject of this appeal. Officer Nelson testified, without elaboration,

that he had encountered defendant on two or three prior occasions in his capacity as a Chicago police officer.

One of the other officers found a full pad of blank prescriptions in Hiller's pocket. Also found on Hiller were two prescription vials, labeled for a "Steve Kaplan," of diazepam and secobarbital. (This testimony was excluded from the suppression hearing on defendant's objection; however, it was admitted into evidence at trial.)

Nelson testified regarding the purpose of the search:

"Q. Officer, what was the purpose of the pat down search you made of [defendant]?

A. Protective, custody. We were within his reach, and for our own protection.

Q. You were looking for a weapon?

A. No.

Q. You found a weapon?

A. No.

Q. And you continued to search?

A. After we found the prescription pads, yes.

Q. But that couldn't have been a weapon, could it?

A. Not until we pulled it out and found out what it was.

Q. You didn't arrest [defendant] for disorderly conduct, did you?

A. No, we did not."

Defense counsel argued that the officer had the right to make a pat-down protective search but: "Once he does not feel a weapon, he has no right to go any further. That is the whole point. The fact that this officer knew [defendant] professionally in the past is meaningless." The court disagreed:

"THE COURT: Counsel, I think you are writing some new law that I have not heard of. We have a situation where a defendant is in a place drooling, incoherent, leaning on a wall, and you feel that all the officer can do at that point is ask him to leave. He has violated the law then and there. He is either drunk or incoherent.

DEFENSE COUNSEL: He could be ill.

THE COURT: At that point, we are talking about probable cause.

DEFENSE COUNSEL: If the officer said to him leave, and he didn't—

THE COURT: The officer is not required to say leave. He is in that condition. The officer has reason at that point to investigate further. He begins a search, whether it be for a weapon

or whatever. He finds—inadvertently finds the drug. Now, you are saying no, that is improper. I don't agree with you, counsel."

The court denied the motion to suppress.

At trial, the owner of the 7-Eleven Store, Peter Haleas, testified that he and his wife were alone in the store when three men staggered in. He testified that he did not call the police and did not know who did. The officers who testified at the suppression hearing testified similarly at trial.

The officers testified to finding blue-colored tablets and reddish-orange-colored capsules loose in Blomgren's pockets, and in two prescription-labeled vials in Hiller's pockets, along with the blank prescription pad. These items were introduced into evidence over defendant's relevancy objection.

A police chemist identified the 56 tablets and capsules possessed by defendant as diazepam (Valium) and secobarbital (Seconal). The parties stipulated that a police chemist would testify that the tablets and capsules found on Hiller and Blomgren were identical in shape, size, color and markings to those found on defendant. Also, an officer testified that the prescription vials found on Hiller were for 90 diazepam and 90 secobarbital. Both vials were labeled from Field and Professional Pharmacy, Inc., with the name "G. Urban" as the pharmacist, the name "Steve Kaplan" as the patient, and "Dr. Ragab" as the doctor. The date on the vials was December 4, 1986.

George Urban, a pharmacist at Field Pharmacy, testified that on December 2, 1986, he received a telephone order from someone identifying himself as Dr. Ragab, who asked him to fill a prescription for 90 Valium for Steve Kaplan. On December 4, 1986, a person identifying himself as Steve Kaplan came to the pharmacy in the late morning and gave Urban an additional prescription for 90 secobarbital on a prescription blank from Dr. Elizabeth Sosinski but signed by Dr. Ragab. Urban attempted to verify the second prescription by telephoning Dr. Ragab using the phone number on the prescription; a female voice told him Ragab was unavailable. Urban verified Ragab's DEA drug dispensing number with the woman and was also told that Dr. Sosinski and Dr. Ragab were colleagues sharing the same office. Urban filled the two prescriptions. Urban testified that the person claiming to be Steve Kaplan was not defendant.

Dr. Ragab testified that he had never had a patient named Steve Kaplan and had never prescribed diazepam or secobarbital for such a patient. He had treated Gary Hiller in October 1985, over a year before, by removing stitches from Hiller's head, but he did not give

Hiller diazepam or secobarbital or any other medication. Dr. Ragab testified that the signature at the bottom of the prescription for Steve Kaplan presented to the Field Pharmacy was not his. Dr. Ragab had never heard of Dr. Sosinski and never shared an office with her.

Defendant testified that his father died in August 1985, and that he had received a prescription prior to that from a Dr. Auerbach for diazepam and secobarbital, which he refilled in October and again in December of 1985. Duplicate pharmacy receipts were introduced into evidence from Walgreen's pharmacy as defendant's exhibits Nos. 1, 2, and 10. Defendant testified that the tablets and capsules taken from him at his arrest came from the unused portion of the lawful prescriptions from Dr. Auerbach.

On rebuttal, the State called Darryl Natarus, a Walgreen's pharmacist, who testified that he had filled a prescription in December 1985, consistent with the duplicate receipt in defendant's exhibit one. Natarus testified that the prescription was for diazepam, manufactured by Mylan Co. Natarus described Mylan diazepam as light green in color, with the word "Mylan" marked on the tablet as well as the number 477. Natarus described the diazepam in People's exhibit No. 1F, which were light blue and marked "z 3927," as a Zenith brand diazepam, not Mylan.

Natarus also examined People's exhibit No. 11 and identified it as defendant's prescription for Seconal capsules filled in June 1985. Natarus testified that Walgreen's fills Seconal (secobarbital) prescriptions with Lilly brand drugs, which have the word "Lilly" on the capsule with a three-digit code number. After examining the seconal capsules found on defendant and contained in People's exhibit No. 11, Natarus testified that they were not Lilly brand Seconal and did not come from Walgreen's pharmacy.

On a motion to suppress evidence, the burden of proof is on the defendant to establish that the search and seizure were unreasonable. Once the defendant makes a *prima facie* showing that the search is unlawful, the burden shifts to the State to plead and prove a justification for the search. (*People v. Clark* (1977), 55 Ill. App. 3d 379, 370 N.E.2d 1111.) A reviewing court will not reverse the trial court's finding on a motion to suppress evidence unless the finding is manifestly erroneous. *People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899; *People v. Harris* (1990), 199 Ill. App. 3d 1008, 1012, 557 N.E.2d 1277, 1279.

Defendant initially argues that Officer Nelson's search, which produced the 56 tablets and capsules, was unconstitutional. Specifically, defendant contends that Officer Nelson conducted a protective search

that was either not justified at its inception or, at least, exceeded the permissible scope of a mere pat down of his outer clothing to feel for weapons.

■ The State claims that the search could have been justified as incident to defendant's arrest for disorderly conduct, an ordinance violation. (Chicago Municipal Code §193—1(g) (1939), as amended, now section 8—4—010(g).) The State argues that, while the officer did not actually arrest defendant for violation of the disorderly conduct ordinance, he could have done so because there was probable cause to arrest.

Defendant contends that this alternative argument has been waived because it is raised for the first time on appeal. We conclude that the argument is not waived because, although it was not pressed below, the search incident to arrest theory was the basis for the trial court's ruling admitting the evidence at trial. Moreover, when the State has prevailed at the motion to suppress, on appeal the State, as appellee, may defend the judgment below on any grounds sustained in the record regardless of the reasoning used by the trial court. *People v. Bolden* (1987), 152 Ill. App. 3d 631, 636, 504 N.E.2d 835, 839-40.

■ Section 193—1 of the Municipal Code of Chicago (1939), as amended, now section 8—4—010(g), which prohibits disorderly conduct, states:

> "193—1. A person commits disorderly conduct when he knowingly:
>
> * * *
>
> (g) Appears in any public place manifestly under the influence of alcohol, narcotics or other drug, not therapeutically administered, to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity;
>
> * * *
>
> A person convicted of disorderly conduct shall be fined not less than $5.00 nor more than $500.00 for each offense." (Amend. Coun. J. 5-24-51, at 312. New section passed Coun. J. 3-26-68, at 2561.)"

The power of a police officer to arrest is also provided under the Municipal Code of Chicago, section 11—25 (1939), as amended (now section 2—84—230):

> "The members of the police department shall have power (1) to arrest or cause to be arrested, with or without process, all persons who break the peace, or are found violating any municipal ordinance or any criminal law of the State; (2) to commit arrested persons for examination; (3) if necessary, to detain ar-

rested persons in custody overnight or Sunday in any safe place, or until they can be brought before the proper court; and (4) to exercise all other powers as conservators of the peace as are provided in this code."

The foregoing ordinance provides ample authority for the Chicago police officer here to make a custodial arrest of defendant for an ordinance violation committed in his presence. Officer Nelson observed defendant staggering and drooling and holding onto a store counter for support. Defendant's face was flush. When Nelson tried to question defendant, he could not obtain a coherent answer. The officer had probable cause to arrest defendant and his companions for violating the disorderly conduct ordinance. *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.

■ It is true that the officer did not assert, in his suppression hearing testimony, that he intended to arrest defendant for disorderly conduct. However, an objective standard governs the question of probable cause. The United States Supreme Court has said:

"[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Scott v. United States* (1978), 436 U.S. 128, 138, 56 L. Ed. 2d 168, 178, 98 S. Ct. 1717, 1723.

See also *Horton v. California* (1990), 496 U.S. 128, 138, 110 L. Ed. 2d 112, 124, 110 S. Ct. 2301, 2308-09.

A search incident to arrest is a reasonable intrusion under the fourth amendment. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) Of course, a search cannot be justified as being incident to a later arrest if the arrest, in turn, is justified only by the fruits of the earlier search. (*Sibron v. New York* (1968), 392 U.S. 40, 62-63, 67, 20 L. Ed. 2d 917, 934-35, 937, 88 S. Ct. 1889, 1902-03, 1905; see also *Smith v. Ohio* (1990), 494 U.S. 541, 108 L. Ed. 2d 464, 110 S. Ct. 1288.) However, it is well established that a search may be made immediately prior to the arrest and need not take place subsequent to it. *Rawlings v. Kentucky* (1980), 448 U.S. 98, 110-11 & n.6, 65 L. Ed. 2d 633, 645-46 & n.6, 100 S. Ct. 2556, 2564 & n.6; *Sibron v. New York* (1968), 392 U.S. 40, 77, 20 L. Ed. 2d 917, 943, 88 S. Ct. 1889, 1909 (Harlan, J., concurring); *United States v. Hernandez* (5th Cir. 1987), 825 F.2d 846, 851-52; *United States v. Jaramillo* (N.D. Ill. 1989), 714 F. Supp. 323, 333, *aff'd* (7th Cir. 1989), 891 F.2d 620, 627; *People v. Rossi* (1981), 102 Ill. App. 3d 1069, 430 N.E.2d 233.

■ The reason that the search may precede the arrest is that an innocent individual is saved from an unnecessary formal arrest where, with probable cause to arrest, the officer searches first. In *People v. Simon* (1955), 45 Cal. 2d 645, 648, 290 P.2d 531, 533, the California Supreme Court said:

> "Thus, if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested ***, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. On the other hand, if he is not innocent or the search does not establish his innocence, the security of his person, house, papers, or effects suffers no more from a search preceding his arrest than it would from the same search following it."

Our court followed this rule in *People v. Rossi*, 102 Ill. App. 3d 1069, 430 N.E.2d 233, where the defendant was prosecuted for a quantity of phencyclidine, PCP, recovered in a search of his wallet. The trial court suppressed the evidence.

Rossi was a passenger in his car, which was being driven by a friend. A police officer pulled the pair over for a defective taillight. When Rossi just looked at the officer in response to an inquiry as to his knowledge about the taillight, and after the officer noticed an open beer bottle in the back seat, passenger side, he asked Rossi and the driver to step out of the car. Rossi swayed when he walked, and he mumbled incoherently when asked if he had a driver's license.

During a search of the car a "roach" and a hunting knife were found in the car. Rossi and the driver were then searched. Rossi again mumbled incoherently when asked his name and identity. Rossi was advised that his wallet would be taken and inspected. The officers found PCP in the wallet and arrested Rossi for possession of a controlled substance.

One of the officers later testified that his purpose in searching the wallet was to obtain identification pursuant to taking Rossi into custody and that he was possibly going to write a citation for open liquor in an automobile. The other officer testified that at the time they searched the wallet, he was considering making an arrest for the transportation of open liquor and for the unlawful use of weapons.

The court in *Rossi* held that it appeared Rossi was in custody and would have been advised of his arrest but for the discovery of the PCP. The court also held that the search of Rossi's person and wallet was validly made pursuant to the existence of probable cause to arrest, even though he was arrested for a different offense. The court stated:

"[T]he fact that the arrest of defendant did not take place before the search and was not for the original offenses does not vitiate the existence of probable cause for the search incident to arrest." (102 Ill. App. 3d at 1073, 430 N.E.2d at 236.)

We think *People v. Rossi* reached the correct result and applies to the case at bar. See also *United States v. Gay* (10th Cir. 1985), 774 F.2d 368.

We note that other jurisdictions have found probable cause to arrest supports a valid search when faced with similar facts, *i.e.*, where probable cause to make an arrest for disorderly conduct exists, a search *preceding* any arrest reveals other contraband, and defendant is charged only with possession of the contraband and not charged with disorderly conduct. A defendant need not be subsequently charged with or convicted of the offense that gave the police probable cause to arrest. See, *e.g.*, *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (defendant convicted of narcotics offense arising from search incident to arrest for driving under revoked license); *State v. McDaniel* (1925), 115 Or. 234, 237 P. 373 (defendant convicted of possession of intoxicating liquor arising from search incident to being intoxicated in public place in presence of officers, even though defendant was not later held to answer for offense of public intoxication; court held it was only relevant that defendant was guilty of committing a crime, in the presence of the officers, for which he could have been arrested); *Springer v. State* (1904), 121 Ga. 155, 48 S.E. 907 (defendant convicted of carrying a concealed weapon arising from search incident to arrest for being drunk and disorderly, even though defendant was not arrested for being drunk; the fact that the policeman testified that defendant was drunk and disorderly establishes that the officer would have been justified in making such an arrest); *State v. Kaplan* (1989), 20 Conn. App. 183, 565 A.2d 11 (defendant convicted of possession of cocaine arising from search incident to possession of prescription vial which was not in defendant's name and did not contain correct pills; it is of no moment that defendant was not charged with possession of fraudulent prescription); *People v. Sirak* (1969), 2 Cal. App. 3d 608, 82 Cal. Rptr. 716 (defendant convicted of possession of marijuana aris-

ing from search incident to driving under the influence of alcohol; court held that even if officer had not decided to arrest defendant, the facts established that he then possessed sufficient information to furnish reasonable cause to arrest); *People v. Benedict* (1969), 2 Cal. App. 3d 400, 82 Cal. Rptr. 759 (conviction upheld, where arrest made after "search" of defendant's arms revealing puncture wounds; search incident to being under the influence of drugs after officer noted defendant's thick, slurred speech, difficulty moving, constricted pupils); *People v. Gregg* (1968), 267 Cal. App. 2d 567, 73 Cal. Rptr. 362 (defendant convicted of possession of heroin arising from search incident to being under influence of narcotics where officer observed defendant in dazed condition, extremely nervous, with contracted pupils); *People v. Holze* (1977), 55 Ill. App. 3d 155, 370 N.E.2d 1171 (defendant convicted of possession of controlled substances arising from search incident to driving under influence where the officer observed defendant driving erratically, glassy eyes, odor of alcohol, swaying when he walked; officer did not need to inform defendant he was under arrest before searching him); *People v. Jones* (1962), 17 A.D.2d 616, 232 N.Y.S.2d 18 (defendant convicted of possession of narcotics arising from search incident to arrest for disorderly conduct, even though disorderly conduct charge was dropped); *State v. Charles Somers* (Ohio App. 1st Dist., Mar. 3, 1981), No. C—800179 (defendant convicted of possession of cocaine arising from search incident to public intoxication or disorderly conduct; court held that from the information known to the officer there was an independent source of probable cause to support the search).

■ We are sensitive to the need to maintain "procedural rules that allow effective police activity while preventing situations *** in which the police search an individual, with less than probable cause, for the purpose of discovering evidence which will thereafter form the basis for the arrest." (*United States v. Chatman* (9th Cir. 1977), 573 F.2d 565, 568, 571 (Takasugi, J., dissenting).) We do not seek to permit the police to "search any citizen without a warrant or probable cause so long as an arrest immediately follows." (*Smith v. Ohio*, 494 U.S. at 543, 108 L. Ed. 2d at 468, 110 S. Ct. at 1290.) Indeed, we abhor that result. However, we cannot conclude, on the present facts, that Officer Nelson was unauthorized to arrest defendant when defendant was obviously violating the disorderly conduct ordinance within a store. Defendant and his companions frightened the storekeeper, and defendant appeared to be so much under the influence of intoxicants or drugs that he might endanger himself or others or the store property. The officer was aware of defendant's condition and

could have arrested him and taken him to the station house. A full search of defendant's person incident to such custodial arrest is completely justified under the law. We can find no abuse of discretion on behalf of the trial court in upholding the instant search as incident to probable cause to arrest for disorderly conduct, as the trial court evidently concluded. We therefore affirm the judgment denying defendant's motion to suppress the evidence seized from defendant.

Defendant next contends that the jury instructions on possession of a controlled substance used at his trial were fundamentally unfair because they failed to define the term "unlawfully possessed."

At trial, defendant admitted possessing the capsules and tablets in question but testified that he lawfully possessed them pursuant to a valid prescription.

■ Defendant was convicted of two counts of the lesser included offense of possession of a controlled substance, a Class 4 felony under section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)). Section 402 provides that it is unlawful for a person to knowingly possess a controlled substance "[e]xcept as otherwise authorized by this Act." (Ill. Rev. Stat. 1985, ch. 56½, par. 1402.) A person who has a valid prescription from a licensed practitioner legally may possess a controlled substance. Ill. Rev. Stat. 1985, ch. 56½, par. 1302(c)(3).

Three instructions given to defendant's jury are relevant. The jury was instructed:

"A person commits the offense of possession of a controlled substance when he knowingly and *unlawfully* possesses a controlled substance." (Emphasis added.) (People's Instruction No. 11.)

Defendant's jury was further instructed:

"To sustain the charge of possession of a controlled substance, the State must prove the following propositions: That the defendant knowingly and *unlawfully* possessed [name of drug], a controlled substance.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.) (People's Instructions Nos. 12, 13.)

The instructions given were modified versions of Illinois Pattern Jury Instructions, Criminal, Nos. 17.12 and 17.13 (2d ed. 1981). Those instructions do not include the term "unlawfully."

Defendant complains that the jury, lacking a definition of the term "unlawfully possesses," would not have known that possession of a controlled substance pursuant to a lawful prescription is not a crime. Thus, the jury might have convicted him for using the substances despite the existence of a prescription.

■ Initially, we disagree that the term "lawfully possesses" constitutes an element of the crime of possession of a controlled substance. Possession of a controlled substance pursuant to a valid prescription issued by a practitioner as defined under the Act is an exemption under section 506 (Ill. Rev. Stat. 1985, ch. 56½, par. 1506), which requires the defendant to advance evidence that he comes within the exemption. Section 506 provides:

"It is not necessary for the State to negate any exemption or exception in this Act in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this Act. The burden of proof of any exemption or exception is upon the person claiming it." (Ill. Rev. Stat. 1985, ch. 56½, par. 1506.)

When a defendant produces evidence which brings him within the exemption, the State then bears the burden of disproving the exemption beyond a reasonable doubt. (*People v. Biers* (1976), 41 Ill. App. 3d 576, 582, 353 N.E.2d 389, 394; see also *People v. Williams* (1962), 23 Ill. 2d 549, 554-56, 179 N.E.2d 639, 643 (court interpreted a similar provision of the Uniform Narcotic Drug Act as requiring the State to assume the ultimate burden of persuasion once the defendant introduced evidence supporting an exemption to justify his possession of narcotics).) We hold, therefore, that the Controlled Substances Act's provision placing the burden on the defendant to produce evidence of a statutory exemption is tantamount to an affirmative defense. Just as a defendant cannot complain if the court's instructions provide him greater protection than the law requires (see *People v. Upton* (1987), 151 Ill. App. 3d 1075, 503 N.E.2d 1102 (instructions placed greater burden on State than required by law)), a defendant cannot complain that the instructions stated an exemption or affirmative defense as if it were an element. No error occurred.

Next, defendant contends that even if the exemption for possession pursuant to a lawful prescription is not an element but is treated like an affirmative defense, the jury instructions used at his trial confused the jury as to the burden of proof similarly to the mur-

der-manslaughter instructions condemned in *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141. We disagree.

■ Nothing remotely similar to the error in *People v. Reddick* occurred in the case at bar. Indeed, the instructions given, People's Nos. 12 and 13, informed the jury that it was the State's burden to prove that defendant's possession of the controlled substances was unlawful. Other instructions informed the jury that the State must carry its burden of proof by the beyond the reasonable doubt standard. In *People v. Reddick*, it was not merely the confusing nature of the instructions which required a new trial, but the fact that the jury was at no time apprised of the correct burden of proof. (123 Ill. 2d at 198-99, 526 N.E.2d at 147.) As defendant's jury was apprised that the State had the burden of proof beyond a reasonable doubt as to the unlawfulness of defendant's possession, we conclude that defendant's claim of *"Reddick* error" lacks merit.

■ Finally, defendant argues that the lack of a definition of "unlawfully possesses" renders the instructions so vague as to leave the jury without ascertainable standards to guide it in applying the law. Defendant waived this claim of error by not tendering his own instructions remedying that alleged defect. *People v. Carlson* (1980), 79 Ill. 2d 564, 584, 404 N.E.2d 233, 241-42; *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.

Moreover, there was ample evidence offered in rebuttal by the State to undermine defendant's claim of lawful possession. Thus, we do not see this case as being so closely balanced that defendant's waiver of the claim of instructional error is excused. Nor do we see any substantial defect in the use of the term "unlawfully possesses" in the instructions such that fairness requires us to review the claim of instructional error.

Defendant lastly argues that the trial court erred in allowing the testimony of the pharmacist and the doctor to be introduced at trial. He complains that their testimony was not relevant. Also not relevant, he claims, was the blank prescription pad and two vials, one containing Valium and the other Seconal, found on the co-arrestee Hiller, or the Valium and Seconal found loose in co-arrestee Blomgren's pockets. Defendant first raised this claim in a motion *in limine* and has preserved it by subsequent objection and motion for new trial.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (*People v. Johnson* (1986), 114 Ill. 2d 170, 193, 499

N.E.2d 1355, 1365; *People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295, 297.) The determination of what is relevant is within the sound discretion of the trial court, and its discretion will not be disturbed on review unless it clearly appears that it has abused its discretion. *People v. Johnson*, 114 Ill. 2d at 193, 499 N.E.2d at 1365; *People v. Franklin* (1981), 93 Ill. App. 3d 986, 418 N.E.2d 155.

In his opening statement, made before the beginning of the State's case, defendant outlined his defense that he had a prescription for the Valium and Seconal that he possessed and that there was no evidence that the drugs he possessed came from the vials found on Hiller. Once defendant asserted in his opening statement that he was authorized by prescription to possess the drugs, the source of the drugs became an issue of consequence in the trial. Therefore, the State could properly introduce evidence of an alternative source of the drugs. In addition, we note that defendant was not convicted of possession with intent to deliver, as charged originally. We hold that he was not prejudiced by the introduction of evidence that the prescriptions were fraudulent.

Judgment affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.