No. 116,649

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY MICHAEL BRAZZLE,
*Appellant*.

SYLLABUS BY THE COURT

1.

When a criminal defendant challenges the sufficiency of the evidence regarding a conviction for possession of a controlled substance, uncontroverted testimony by a witness identifying the substance through consultation with www.drugs.com is sufficient to support the jury's conclusion beyond a reasonable doubt that the substance was that identified by the witness.

2.

Possession of a controlled substance is unlawful under K.S.A. 2016 Supp. 21-5706. Lawful possession of a controlled substance by prescription is an affirmative defense. A criminal defendant charged with unlawful possession of a controlled substance must claim legal authorization to possess the controlled substance at issue before the State is obligated to disprove that claim beyond a reasonable doubt.

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed January 12, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*James W. Garrison*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

1

Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.

PIERRON, J.: Anthony Michael Brazzle appeals from several drug-related convictions. He argues the district court erroneously admitted K.S.A. 60-455 evidence related to a prior drug sale with undercover police detectives; the district court erroneously instructed the jury on possession of oxycodone; and the evidence produced at trial was insufficient to support his conviction for possession of oxycodone.

Just after midnight on December 12, 2015, police officers Ryan Doehling and Lusk were staking out the Royal Inn in Manhattan, Kansas. The officers suspected that drug transactions were being conducted at the Inn, based on undercover operations conducted at the Inn by other officers.

The officers saw a dark-colored sedan drive into the Inn parking lot and remain for 10-15 minutes. They could not see whether any passengers were in the vehicle when it arrived. As the vehicle left the Inn, it failed to stop completely at the parking lot exit before turning onto the street, a violation of a Manhattan city ordinance. Not wanting to draw undue attention by conducting a traffic stop in front of the Inn, the officers followed the sedan for a couple blocks before stopping it at a traffic signal.

Lusk contacted the driver, who could not provide identification. The driver originally identified himself as Marcus Brazzle, but when the officers challenged the identification because his tattoos did not match, Brazzle admitted that his name was actually Anthony Brazzle.

While Brazzle was detained to run his identification, a K-9 unit arrived and conducted a canine search outside the vehicle. The dog alerted at the passenger side door and at the driver's side door. The canine handler, Officer Andrew Toolin, conducted a search of the vehicle. Under the front passenger seat, he discovered a Crown Royal bag.

2

Inside this bag were two plastic baggies with substantial amounts of what appeared to be crystal methamphetamine, a glass smoking device, U.S. currency totaling $128, some blister packs containing gray pills marked "K 57," and some small, unused plastic baggies. Under the driver's seat, Toolin discovered an unpackaged gray pill marked "K 57" and a glass smoking device with white residue. Along the driver's side front door panel, Toolin found a pair of "brass knuckles." Toolin later looked up the gray pill on www.drugs.com and determined that it was oxycodone hydrochloride.

Testing by the Kansas Bureau of Investigation confirmed that the crystalline substance in the two baggies was methamphetamine, one bag contained a net weight of 2.98 grams and the other baggie contained 5.28 grams.

The State originally charged Brazzle with possession with the intent to distribute methamphetamine, felony possession of drug paraphernalia, and criminal use of a weapon. The State later added a charge of unlawful possession of a controlled substance, i.e., oxycodone. The court conducted a preliminary examination hearing and found probable cause to bind Brazzle for trial on all counts.

The State filed a motion seeking admission of K.S.A. 60-455 evidence that Brazzle was involved in an undercover drug transaction a week before the incident which supported the charges in this case. Brazzle had not yet been convicted of the former criminal activity, but the district court found the evidence sufficiently probative to establish Brazzle's intent to distribute methamphetamine and to outweigh the evidence's potential for unfair prejudice.

At a single-day jury trial, Brazzle presented no evidence. The jury convicted Brazzle of all counts. The district court denied Brazzle's motion for judgment of acquittal on the possession with intent to distribute charge.

Prior to sentencing, Brazzle moved for a downward dispositional and/or durational sentencing departure based on his relatively young age and acknowledgement of a drug problem requiring treatment. At sentencing on August 22, 2016, the district court denied the departure motion and imposed a controlling sentence of 105 months in prison for possession with the intent to distribute methamphetamine. The court ran Brazzle's other sentences concurrent with the base offense of possession with the intent to distribute methamphetamine.

On appeal, Brazzle first contends the district court committed reversible error in admitting evidence that, one week before his arrest in this case, two undercover police detectives had purchased methamphetamine from Brazzle in two controlled drug transactions. He contends that the evidence was not probative to demonstrate intent because he never claimed his possession of the methamphetamine was innocent and because the potential prejudice from the evidence substantially outweighed its probative value.

The issue was properly preserved by argument against the State's motion to admit the evidence under K.S.A. 2016 Supp. 60-455 and by a contemporaneous and continuing objection to the detectives' testimony at trial.

*Materiality*

K.S.A. 2016 Supp. 60-455 provides for exclusion of evidence of criminal wrongdoing to establish the defendant's propensity to commit such acts but also provides a rule of inclusion when such evidence is relevant to prove a material fact. See *State v. Seacat*, 303 Kan. 622, 629, 366 P.3d 208 (2016). The list of material facts included in K.S.A. 2016 Supp. 60-455(b) is not exhaustive. See *State v. Barber*, 302 Kan. 367, 374, 353 P.3d 1108 (2015). The test for inclusion of this evidence consists of three inquiries: (1) Does the evidence address a material fact, i.e., does it have some real bearing on the

4

decision in the case? (2) Is the material fact disputed? (3) Does the probative value of the evidence outweigh the potential for undue prejudice? *Seacat*, 303 Kan. at 631.

The State offered the K.S.A. 60-455 evidence to establish Brazzle's plan or intent for the methamphetamine found in his car during the traffic stop on December 12, 2015. Citing *State v. Bly*, 215 Kan. 168, 176, 523 P.2d 397 (1974), and a comment to PIK Crim. 4th 51.030, Brazzle argues that the evidence of his prior criminal activity was not relevant to establish intent because he did not plead innocence to the charged offense. This argument completely ignores the defense Brazzle raised in the case, which was primarily to contend that the State could not establish that the drugs in the car belonged to him.

Previously, this court has considered a defendant's prior sale or use of illegal drugs to be a relevant factor in cases involving nonexclusive possession of drugs. See *State v. Johnson*, 33 Kan. App. 2d 490, 502, 106 P.3d 65 (2004); *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991). But the Kansas Supreme Court disapproved of the practice of automatically admitting evidence of prior drug distribution or use in such cases. See *State v. Boggs*, 287 Kan. 298, 315, 197 P.3d 441 (2008) ("[W]hen a defendant does not assert that his or her actions were innocent but rather presents some other defense, there is no reason to admit evidence of other crimes or civil wrongs to prove intent."). Nevertheless, by claiming that the State could not prove that the items discovered in the sedan belonged to him, Brazzle essentially raised a defense of innocence. See *State v. Graham*, 244 Kan. 194, 196-97, 768 P.2d 259 (1989) (finding that Graham placed intent in issue by presenting a defense that the illegal drugs were found in clothing which did not belong to Graham and in an automobile that did not belong to him).

In the present case, Brazzle's proximity to the methamphetamine in the vehicle he was driving was not disputed. Accordingly, the only material fact issue in the case is

whether he possessed the drugs and paraphernalia, meaning he had control of the drugs and paraphernalia with the knowledge and intent to do so. See *State v. Rosa*, 304 Kan. 429, 436-37, 371 P.3d 915 (2016) ("Possible 'innocent explanations' would include the claims that the defendant either was unaware of the presence of the drugs or was under the mistaken belief that the drugs were not illegal drugs but were some other lawful substance."); *Boggs*, 287 Kan. at 312 (citing favorably *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 3, 551 P.2d 1247 [1976]).

Not only was Brazzle's knowledge of the contraband and intent to exercise control over the contraband questioned but so was his intent in possessing the contraband, i.e., whether he intended the drugs and contraband for personal use or for distribution. Evidence that Brazzle conducted two sales of methamphetamine with undercover detectives a week prior to his arrest in this case at a location he had just left before the traffic stop in this case is highly probative of his intent to distribute the methamphetamine he possessed rather than to possess it for personal use.

*Probative Value vs. Prejudice*

Brazzle further contends that even if the K.S.A. 60-455 evidence was relevant to his intent, its potential for undue prejudice outweighed any probative value it held. Before admitting material evidence under K.S.A. 2016 Supp. 60-455, a court must weigh the probative value of the evidence against the danger of unfair prejudice. *Seacat*, 303 Kan. at 631. Appellate review of the district court's balancing and weighing of probative value and potential prejudice is limited to determining whether the court abused its discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). Brazzle bears the burden of establishing an abuse of that discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016).

6

Judicial discretion is abused only when a decision is so arbitrary, fanciful, or unreasonable that no reasonable person in the position of the court would have rendered a similar decision or when the decision is inconsistent with the applicable legal framework or with the evidence in the case as demonstrated by the record on appeal. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

The Kansas Supreme Court has previously identified the common types of potential prejudice arising from the admission of K.S.A. 60-455 evidence.

> "'. . . First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution had not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed. . . .'" *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 (1973) (quoting Vernon's Kansas Statutes Annotated, Rules of Evidence, § 60-455, p. 376).

See also *State v. Gunby*, 282 Kan. 39, 48-49, 114 P.3d 647 (2006) (quoting *Davis*).

There is undoubtedly prejudice arising from the jury's consideration of Brazzle's arrests for methamphetamine sales to undercover detectives. The fact that Brazzle had not been convicted of these prior criminal acts does not necessary preclude the evidence's admission. See *United States v. Nolan*, 551 F.2d 266, 270 (10th Cir. 1977) (holding that Federal Rule of Evidence 404[b] refers to evidence of other crimes, wrongs, or acts and does not require proof of a conviction). But the fact that Brazzle had not yet been convicted of these prior offenses diminishes the probative weight of the evidence, since he might have a valid defense to the criminal charges. Nevertheless, even if Brazzle possessed some legal defense to the drug transactions, the circumstances of the prior methamphetamine sales do not suggest a likelihood of mistaken identity or an absence of

an intent to commit the alleged acts. The district court provided a limiting instruction to the jury about the use to which it might put the evidence regarding the drug transactions. As a result, the potential prejudice arising from the admission of the K.S.A. 60-455 evidence does not substantially outweigh its probative value. The district court's decision to admit the evidence does not constitute an abuse of judicial discretion.

Brazzle next challenges the district court's elements instruction for possession of oxycodone. Brazzle tacitly concedes that he did not object to the instruction at trial, citing the clearly erroneous standard of appellate review. However, the error Brazzle raises may be deemed invited by him. Both Brazzle and the State submitted proposed jury instructions. The State's instruction on the elements of possession of oxycodone omitted the language that Brazzle now contends constituted clear error. In submitting his proposed instruction, Brazzle cited PIK Crim. 4th 57.040, but also indicated that he agreed with the State's proposed draft instruction. Since Brazzle advocated the version of the instruction ultimately given to the jury by the court, he cannot now claim error in the court's choice. See *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011) ("When defendant's requested instruction is given to the jury, the defendant cannot complain the requested instruction was error on appeal."); *State v. Hargrove*, 48 Kan. App. 2d 522, 549-50, 293 P.3d 787 (2013) ("If Hargrove's lawyer made a tactical decision to request a jury instruction . . . , then the invited error doctrine should be applied on direct appeal to bar a claim that the conviction be reversed based on that omission. . . . A contrary rule would permit manipulation of the adversary process in a way that inflicts a deep wound on the systemic fairness vital to that process. The danger is no less when the rights compromised for strategic purposes rise to a constitutional level.").

In his next issue on appeal, Brazzle contends that his conviction for possession of oxycodone was not supported by sufficient evidence. He argues that the State's evidence was deficient on two points. First, the State failed to present adequate evidence that the pills found in the vehicle he was driving were in fact oxycodone because the State did not

present evidence that any of the pills were tested. Second, the State failed to present any evidence that Brazzle did not have a prescription for the oxycodone. Brazzle has not presented any evidence tending to prove the drugs were not oxycodone or that he had a prescription for the oxycodone.

When the sufficiency of the evidence is challenged in a criminal case, an appellate court reviews the evidence in a light most favorable to the State. The conviction will be affirmed if the court's review of the evidence persuades it that a rational fact-finder could have found beyond a reasonable doubt that the defendant was guilty of the charged offense. See *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In reviewing the evidence, the court does not reweigh the evidence or reassess the credibility of the witnesses. See *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

*Absence of Testing*

At trial, Office Toolin testified that he compared the small, gray pill with the "K 57" marking with information on www.drugs.com, a resource frequently used by law enforcement to identify prescription pills, to identify the pill as oxycodone hydrochloride. Brazzle now contends this evidence was insufficient to establish the identity of the pills beyond a reasonable doubt.

Though the issue is one of first impression in Kansas, other courts have generally addressed reliance upon physical characteristics of a pharmaceutical drug and consultation with a website by a layperson in terms of hearsay exceptions or witness qualifications. See *People v. Mooring*, 15 Cal. App. 5th 928, 223 Cal. Rptr. 3d 616 (2017) (generally upholding reliance on a similar website against hearsay and confrontation challenges); *People v. Spradlin*, 56 Misc. 3d 742, 750, 52 N.Y.S.3d 833 (2017) ("While it may be best practice for an officer to recite his training and experience, such absence is not fatal to an accusatory where the officer specifically identifies the

9

appearance of pills which includes the imprint markings as required by Federal Law [21 C.F.R § 206.10] and enters such data in to the drugs.com data base."); *State v. Sandoval*, No. 1 CA-CR14-0242, 2015 WL 1035236, at *6 (Ariz. App. 2015) (unpublished opinion) (authorizing testimony based on detective's consultation of a drug website to identify the drugs and confirmation of the pills' identity with a pharmacist). But see *People v. Hard*, 342 P.3d 572, 579 (Colo. App. 2014) (holding that information on www.drugs.com was insufficiently reliable to qualify as a market report exception to hearsay); *State v. Alston*, 802 S.E.2d 753, 755 (N.C. App. 2017) (finding plain error where detective identified controlled substance by visual inspection and reference to www.drugs.com when the pills were never submitted for chemical analysis).

Assuming, for a moment, that Officer Toolin's testimony was properly admissible, his testimony provided the jury with uncontroverted evidence that the gray pills found in the vehicle were oxycodone hydrochloride. So any defect in the State's evidence lies in the admissibility of Toolin's testimony—for the State's alleged failure to qualify him as an expert, for his lack of foundation to testify about the identity of the pills, and for the hearsay nature of the information upon which he relied. All of these defects pertain to evidentiary issues, which Brazzle failed to preserve with a contemporaneous objection. Accordingly, Toolin's testimony may not be challenged in this appeal. See *State v. Solis*, 305 Kan. 55, 63-64, 378 P.3d 532 (2016) (adhering to contemporaneous objection rule for evidentiary issues even when constitutional rights are at stake). Given that the evidence was admitted without objection, Toolin's testimony provided a sufficient basis from which the jury could reasonably conclude that the gray pills were oxycodone hydrochloride. We find it important there was testimony that www.drugs.com is commonly used to identify drugs and there was no evidence to the contrary.

*Absence of Prescription*

The parties do not dispute that the State presented no evidence at trial that Brazzle lacked a prescription for the oxycodone hydrochloride pills. The dispute in this case turns on whose burden it is to establish proof of a prescription or the lack thereof. Brazzle naturally argues that the State bears the burden to prove every element of the crime, including the unlawful nature of Brazzle's possession. The State contends that possession of oxycodone with a valid medical prescription is an exception to the rule that its possession is unlawful and, therefore, an authorized prescription for a controlled substance is in the nature of an affirmative defense, a legal justification for possession of an otherwise unlawful controlled substance.

This case squarely addresses the question suggested by the concurring opinion in *State v. Young*, No. 111,913, 2015 WL 5750541, at *15 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., concurring):

> "As the majority notes, Young testified he had a physician's prescription for the oxycodone, a controlled substance. As provided in K.S.A. 2014 Supp. 65-4116(c)(3), a person may lawfully possess oxycodone if he or she has a legitimate prescription for it. But K.S.A. 2014 Supp. 21-5706 criminalizes the possession of controlled substances without making reference to or allowance for a lawful prescription. The two statutes aren't entirely harmonious. And it's not entirely clear from the statutes whether the lack of a legitimate prescription is an element of the offense or the existence of a legitimate prescription is an affirmative defense. For purposes of this case, the difference is an academic one as I view it." 2015 WL 5750541, at *15.

In the present case, the difference is no longer academic. If the unlawful possession of oxycodone—to the exclusion of any evidence of a prescription—is an element of the crime, the State has the burden to establish proof beyond a reasonable doubt. The absence of any evidence regarding the existence of a prescription in this case would constitute a

11

failure to prove all the elements of the offense. In contrast, if a prescription for oxycodone is a legal defense to the otherwise illegal possession of the drug in the nature of an affirmative defense, the result is different. Since Brazzle has made no claim that he possessed a prescription for the drug, the State was not required to rule out the legal defense of a prescription.

The resolution of the issue rests in the proper interpretation of the relevant statutes, which is a question of law subject to unlimited appellate review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016).

K.S.A. 2016 Supp. 21-5706 criminalizes the possession of controlled substances and refers to various provisions within the Uniform Controlled Substances Act (UCSA), K.S.A. 65-4101 et seq., to establish what substances constitute controlled substances within the meaning of the criminal code. Notably, K.S.A. 2016 Supp. 21-5706 does not provide an exemption or an affirmative defense for prescribed controlled substances. Nevertheless, the criminal code must make allowance for authorized possession of controlled substances under the UCSA. Otherwise, our jails would be filled with pharmacists.

The UCSA classifies controlled substances by schedule. Oxycodone and its salts or derivatives are classified as a Schedule II controlled substance. See K.S.A. 2016 Supp. 65-4107(b)(1)(N) and (b)(2). The UCSA authorizes persons licensed by the Kansas Board of Pharmacy to possess and distribute certain controlled substances. K.S.A. 2016 Supp. 65-4116(a) and (b). K.S.A. 2016 Supp. 65-4123 further restricts the types of controlled substances that a licensee may possess and distribute. The restrictions are classified by schedule. See, e.g., K.S.A. 2016 Supp. 65-4123(b) (Schedule II controlled

12

substances). Schedule I controlled substances may not be distributed. K.S.A. 2016 Supp. 65-4123(a).

K.S.A. 2016 Supp. 65-4116(c), however, provides exceptions for the licensure requirement. Pertinent to this case, subsection (c)(3) of that statute provides:

> "(c) The following persons need not register and may *lawfully* possess controlled substances under this act, as specified in this subsection:
>
> . . . .
>
> (3) an ultimate user or a person in possession of any controlled substance pursuant to a *lawful* order of a practitioner or a mid-level practitioner or in *lawful* possession of a schedule V substance." (Emphases added.)

Though the structure of the statutory scheme governing controlled substances does not conclusively resolve the question, the absolute nature of the prohibition in the criminal code for the possession of controlled substances is tempered by the authorization for possession of certain controlled substances in certain circumstances. The statutory scheme suggests that the limited authorization for the possession of controlled substances operates as an exception to the general prohibition and effectively constitutes an affirmative defense. As such, a person charged with violating K.S.A. 2016 Supp. 21-5706 must bring forward a claim of legal authorization to possess the controlled substance at issue.

Other jurisdictions to consider similar statutory schemes with the legislative adoption of the Uniform Controlled Substances Act have reached a similar construction. See, e.g., *People v. Whaley*, 159 P.3d 757, 759-60 (Colo. App. 2006); *People v. Kolichman*, 218 Ill. App. 3d 132, 144, 578 N.E.2d 569 (1991); *State v. Skorvanek*, 182 Ohio App. 3d 615, 622, 914 N.E.2d 418 (2009), *overruled on other grounds by State v. Straley*, 139 Ohio St. 3d 339, 11 N.E.3d 1175 (2014); *State v. Yokel*, 196 Wash. App. 424, 430, 383 P.3d 619 (2016).

Since a prescription forms an affirmative defense to prosecution for possession of a controlled substance, the State was not required to prove the absence of a prescription in order to obtain a conviction under K.S.A. 2016 Supp. 21-5706 for possession of oxycodone hydrochloride. The State presented sufficient evidence to support Brazzle's conviction for possession of oxycodone hydrochloride.

Affirmed.

* * *

ATCHESON, J., concurring in part and dissenting in part: I respectfully dissent from that part of the majority opinion finding sufficient evidence to support the conviction of Defendant Anthony Michael Brazzle for possession of oxycodone. The testimony of Riley County Police Officer Andrew Toolin was insufficient to permit a factual finding that beyond a reasonable doubt the pills found in the car were oxycodone or any other controlled substance. For that reason, I would reverse Brazzle's conviction of that crime for insufficient evidence and vacate the concomitant sentence. I otherwise concur in the results the majority reaches on the remaining issues Brazzle has raised on appeal.

In considering a challenge to the sufficiency of the evidence supporting a conviction, we ask whether reasonable jurors could find the elements of the crime proved beyond a reasonable doubt taking the evidence in the best light for the State. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). By the same token, however, a conviction cannot depend on speculation or conjecture. See *State v. Williams*, 229 Kan. 646, 663-64, 630 P.2d 694 (1981); *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 581-83, 203 P.3d 735 (2009); *State v. Judd*, No. 112,606, 2016 WL 2942294, at *2 (Kan. App. 2016) (unpublished opinion) ("[C]onvictions may not rest on speculation or surmise.").

14

The governing issue here is whether the pills in the car Brazzle was driving are oxycodone. The pills were never chemically tested. Officer Toolin, who found the pills, described them at trial as "small, gray pills" with "a K 57 marking" on them. The only evidence the State presented as to the chemical makeup of the pills was this testimony from Officer Toolin:

> "Q. All right, Officer Toolin, now that you've had a chance to look at your report, did you identify that pill?
> "A. Yes, I did.
> "Q. What is it?
> "A. It's Oxycodone hydrochloride.
> "Q. How did you identify that pill?
> "A. Using a common method of drugs.com.
> "Q. Is that something that law enforcement in the United States uses to identify pills?
> "A. Yes, we do."

That's it. Brazzle's lawyer did not cross-examine Officer Toolin on this point. So, at best, the jurors knew that Officer Toolin looked at some site on the Internet and figured out the pills were Oxycodone and that other law enforcement agents use the same site. But the jurors knew nothing about what drugs.com is, what kind of information it offers, who sponsors it, or why it might be reliable—among all of the stuff swirling around in cyberspace—in identifying drugs. Nor did the jurors have any idea how Officer Toolin specifically went about using the site to discern the content of those pills or how it works for other unknown drugs. Officer Toolin presumably could have explained at least some of those things to the jurors. But he didn't. What we effectively have as the only evidence on a key element of the crime is a government agent's statement, "I found it on the Internet, just the way other officers do."

To the extent there is a dividing line between testimony presenting barely sufficient facts and testimony dependent upon juror speculation, this falls well on the speculation side. The jurors had to fill in not only details but basic facts about the identification of the pills as oxycodone through means other than the evidence presented. In short, they were left to guess about how Officer Toolin managed this Internet magic. And guesses aren't good enough to support criminal convictions, especially when that's all there is. See *State v. Burnison*, 247 Kan. 19, 28, 795 P.2d 32 (1990).

The cases the majority cites in support of its conclusion are inapposite. In both *People v. Mooring*, 15 Cal. App. 5th 928, 936-39, 223 Cal. Rptr. 3d 616 (2017), and *State v. Sandoval*, No. 1 CA-CR14-0242, 2015 WL 1035236, at *6 (Ariz. App. 2015) (unpublished opinion), the prosecution presented considerably more evidence about those particular websites and their use and reliability, along with corroborating circumstantial evidence the pills at issue contained controlled substances. In *People v. Spradlin*, 56 Misc. 3d 742, 750, 52 N.Y.S.3d 833 (2017), a judge accepted an officer's reliance on drugs.com in making a probable cause determination to hold a defendant for trial—a preliminary step in the adjudicatory process the judge rather deliberately distinguished from the trial itself. More apt is *People v. Hard*, 342 P.3d 572, 580 (Colo. App. 2014), in which the appellate court found an officer's identification of pills as oxycodone using only drugs.com was legally insufficient to support a conviction.

I would reverse Brazzle's conviction because we don't find people guilty based on evidence that requires jurors to guess about the existence of an element of the crime.