2021 IL App (1st) 191095

No. 1-19-1095

Second Division
April 13, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 9587 |
| | ) | |
| ROBERT WHITE, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Robert White was convicted of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2018)) and sentenced to seven years' imprisonment. He appeals, arguing that the trial court erred in denying his motion to quash arrest and suppress evidence and the evidence at trial was insufficient to establish possession. We affirm.

¶ 2                    I. BACKGROUND

¶ 3    Defendant was charged in a six-count indictment relating to an incident on June 18, 2018. Prior to trial, the State nol-prossed all but count I for UUWF. Defendant moved to quash arrest

and suppress evidence of the firearm, and the court held a simultaneous hearing on the motion and bench trial.

¶ 4    Chicago police officer Forbes[1] testified that on June 18, 2018, he and two other officers were in plainclothes in an unmarked vehicle near the 6300 block of South Aberdeen Street in Chicago, Illinois. Forbes had patrolled the area for four years and described it as a high crime area. From the front passenger seat of the vehicle, Forbes saw "a group of individuals playing dice with money on the ground," with two of the individuals "drinking suspect alcohol." The group was on the sidewalk. Defendant, whom Forbes identified in court, was part of the group and had a bag on his right shoulder. When defendant noticed the officers, he "turned away."

¶ 5    As the vehicle approached, Forbes saw defendant shift the bag "towards the front of his body," "break away from the group," and walk up "some stairs." Forbes and the other officers exited the vehicle, and Forbes instructed defendant to stop. Defendant continued walking up the stairs. Forbes stopped defendant on the stairs, walked him to the police vehicle, and patted him down. Defendant "turned his body away and pressed [the] bag up against the vehicle," prompting Forbes to pat down the bag. Forbes felt the "weight of the bag," believed it to be substantial, and "simultaneously" felt what he "believed to be a handgun." Forbes opened the bag and recovered a loaded firearm, the only object in the bag, which was large enough that it "consumed pretty much the whole bag."

¶ 6    Forbes stated that he stopped defendant because the group was "engaged in a dice game," and Forbes suspected two individuals were drinking alcohol. He then followed defendant up the stairs and patted him down because defendant's conduct led Forbes to believe defendant was

_____

[1]Officer Forbes's first name does not appear in the report of proceedings.

armed. Specifically, the defendant turned away, adjusted the bag, left the group, walked up stairs, and disregarded Forbes's commands.

¶ 7    On cross-examination, Forbes testified that he did not tell the individuals to stop the dice game because he was "dealing with" defendant, but it was Forbes's "thinking" to instruct the group to "break up the dice game" and "disperse." Forbes acknowledged that the police report indicates that the officers approached the group "for a positive community interaction." He exited his vehicle both because of the dice game and defendant's conduct. Defense counsel asked, "Did you see [defendant] actually engage in dice rolling?" Forbes responded, "He was, yeah. There was a game going on and he was engaged in it, yes."

¶ 8    Forbes agreed that he performed a "protective pat down" on defendant. He did so because of a "totality" of factors, including the dice game, defendant's conduct in walking away from the game and "shifting" the bag, and Forbes's knowledge of the area. Forbes also believed defendant had a panicked expression on his face. During the pat down, Forbes "grabbed the bag," felt a "substantial weight," then formed the belief that the item "was a firearm." Forbes acknowledged that during his grand jury testimony, he responded affirmatively to the question, "Did you feel a firearm on the defendant's person?"

¶ 9    The State introduced a certified copy of a conviction for defendant in case number 14 CR 21381 for aggravated unlawful use of a weapon.

¶ 10   The State rested, and the court denied defendant's motion for a directed verdict. Defendant rested for purposes of the motion to quash arrest and suppress evidence, then argued that Forbes conducted an "illegal search and seizure." The State responded that the officers "had more than

sufficient reasonable, articulable suspicion and probable cause to approach this defendant, to detain him, and to do the protective pat down."

¶ 11    The court denied defendant's motion. In so ruling, the court stated that while Forbes's testimony regarding suspected alcohol consumption supported neither "probable cause" nor "suspicion," his testimony was clear that "there was gambling going on" and "[t]hat is a criminal act." The officers therefore had probable cause to arrest defendant and the other individuals. The court also noted that "[t]here were other things," including that Forbes saw defendant move the bag from his side to his front, walk up the stairs, and ignore commands to stop.

¶ 12    Defendant testified that prior to the arrest, he was sitting on a porch listening to music while others played dice on the sidewalk. The bag was on the porch when the officers arrived, not on defendant's shoulder. When the officers arrived, "everybody [began] to disperse and walk up the stairs." While defendant walked up the stairs, Forbes detained him and searched him. Defendant asked if he did anything wrong, and Forbes replied, "no" and "I just have to do my job." Forbes brought defendant to the bottom of the stairs. Another officer took the bag from the porch. Defendant never knew what the bag contained; his cousin had dropped it off earlier that evening, and defendant only placed it on the porch. Defendant denied carrying the bag or disobeying Forbes's commands to stop.

¶ 13    On cross-examination, defendant testified that the bag was not heavy when he received it from his cousin. Defendant was on the bottom of the porch steps when the officers approached and was not playing dice.

¶ 14    During closing arguments, the State argued that Forbes testified credibly, while defendant's testimony was incredible and self-serving. Defense counsel argued that the evidence did not establish that defendant knew what the bag contained.

¶ 15    The court found defendant guilty. In so finding, the court reiterated that the officers had probable cause to arrest defendant because he was "involved with the dice game." While defendant denied participating, the court stated that "this is a matter of credibility," which it resolved in Forbes's favor. Defendant's "testimony at times [was] a little bit confusing," while Forbes's testimony "was not." The court continued that Forbes testified that defendant "had panic on his face" and "moved his bag from his side over to his front," which allowed "some inference that [defendant] knew what the contents [were]."

¶ 16    At a later hearing, the court denied defendant's motion to reconsider the denial of his motion to quash arrest and suppress evidence and defendant's motion for a new trial, then sentenced him to seven years' imprisonment. Defendant did not file a motion to reconsider sentence.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, defendant first argues that the trial court erred in denying his motion to quash arrest and suppress evidence because Forbes lacked constitutional authority to search the bag as part of an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). The State maintains that Forbes had probable cause to arrest defendant, and thus Forbes's search of defendant and the bag was justified as a search incident to arrest.

¶ 19    The defendant has the burden of proof in a motion to quash arrest and suppress evidence. *People v. Cregan*, 2014 IL 113600, ¶ 23. Where the defendant makes a *prima facie* showing that

the evidence was illegally obtained, the burden shifts to the State to introduce evidence to counter the defendant's *prima facie* case. However, the ultimate burden of proof remains on the defendant. *Id.* We employ a two-tiered standard of review when considering a trial court's decision on a motion to quash arrest and suppress evidence. *People v. Holmes*, 2017 IL 120407, ¶ 9. The trial court's findings of fact are given great deference and will be reversed only if manifestly erroneous, but we review *de novo* the court's determination of whether the officer's conduct was legally justified. *Id.* "[T]he reviewing court may consider evidence adduced at trial as well as at the suppression hearing." *People v. Richardson*, 234 Ill. 2d 233, 252 (2009).

¶ 20 The fourth amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV. Generally, police officers must obtain a warrant for a search to be deemed reasonable. *People v. Johnson*, 237 Ill. 2d 81, 89 (2010). There are exceptions to the warrant requirement, including searches incident to lawful *Terry* stops (see *People v. Moss*, 217 Ill. 2d 511, 519 (2005) (citing *Terry*, 392 U.S. at 24)) or searches incident to an arrest supported by probable cause (see *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). As noted, the parties dispute the nature of defendant's encounter with Forbes; defendant argues that the officer performed a *Terry* stop, while the State maintains that probable cause analysis applies.

¶ 21 Fourth amendment protections are implicated where an individual is seized by police, which occurs when a reasonable person, under the totality of the circumstances, would not feel free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In making this determination, courts consider factors including the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*

¶ 22    For a seizure to be authorized under *Terry*, an officer must demonstrate a reasonable, articulable suspicion of criminal activity. See *People v. Timmsen*, 2016 IL 118181, ¶ 9. During a *Terry* stop, an officer may perform a "reasonable search for weapons" for his own protection where a reasonable person would believe that his safety or the safety of others was in danger. *People v. Colyar*, 2013 IL 111835, ¶¶ 34-36. A *Terry* stop's validity is considered under the totality of the circumstances. *Timmsen*, 2016 IL 118181, ¶ 9.

¶ 23    In contrast, an officer has probable cause to arrest where the totality of the circumstances would lead a reasonable person to believe that an individual has committed a crime. *People v. Wear*, 229 Ill. 2d 545, 563-64 (2008). Where probable cause exists, the officer may perform a warrantless search of the individual incident to that arrest. *Gant*, 556 U.S. at 338. This search includes items immediately associated with the individual because they are in his physical possession. *Cregan*, 2014 IL 113600, ¶ 50. The search may occur before the officer actually arrests the individual, but must be supported by probable cause independent of any contraband found as a result of the search. *People v. Little*, 322 Ill. App. 3d 607, 612 (2001). Whether an officer has probable cause to arrest is an objective consideration, and the subjective intent of the officer in initiating the encounter, including whether the officer planned to arrest the individual, is irrelevant. *Whren v. United States*, 517 U.S. 806, 813-15 (1996); see also *People v. Kolichman*, 218 Ill. App. 3d 132, 139 (1991) (the fact that the arresting officer did not testify that his intention was to arrest the defendant did not render a search unreasonable because probable cause objectively existed).

¶ 24    Here, Forbes testified that he saw defendant gambling on the sidewalk, which is illegal under section 28-1 of the Criminal Code of 2012 (720 ILCS 5/28-1 (West 2018)). Forbes then saw defendant, upon noticing the officers, shift a bag around his shoulder to his front, shielding it from

sight of the officers, and walk away from the dice game. Forbes approached defendant and told him to stop, but defendant disobeyed and walked up a staircase. Forbes detained defendant, brought him to the police vehicle, searched defendant, and felt his bag, which had "substantial weight." Forbes then searched the bag and discovered a firearm. He acknowledged that, in his report, he wrote that his initial intent was to perform a "positive community interaction" and break up the dice game, not to arrest defendant. The trial court found that Forbes had probable cause to arrest defendant, based on viewing defendant being involved in illegal gambling, and accordingly denied defendant's motion to quash arrest and suppress evidence.

¶ 25    Based on Forbes's testimony, defendant was seized when Forbes stopped him on the staircase and walked him to the police vehicle, as at this point Forbes had ordered defendant to stop and physically restrained defendant's movement. Forbes testified that, prior to the seizure, he viewed defendant gambling on the sidewalk. Thus, at the time of the seizure, Forbes had probable cause to arrest defendant and search both his person and the bag on his shoulder incident to that arrest. See *People v. Fitzpatrick*, 2013 IL 113449, ¶¶ 14, 24 (an officer may arrest a defendant for even very minor criminal offenses). Forbes was not significantly impeached, and no other evidence was introduced to support or discredit Forbes's testimony at the time the court ruled on defendant's motion. Moreover, while defendant later testified in his case-in-chief that he was not gambling, the bag was on the porch, and he did not know its contents, the court again credited Forbes's testimony at the close of trial and reiterated that defendant was "involved" with gambling when the officers arrived. Viewing the record as a whole, this court has no basis to substitute our judgment for that of the factfinder. See *People v. Slater*, 228 Ill. 2d 137, 149 (2008).

¶ 26    Defendant argues that Forbes's testimony demonstrates that he did not intend to arrest defendant, and only stopped and searched defendant after forming the belief that defendant was possibly armed, a scenario properly analyzed under *Terry*. It is well established, however, that whether probable cause exists, and therefore whether a search may be justified as incident to an arrest, is an objective consideration. *Whren*, 517 U.S. at 813-15 Here, objectively, Forbes had probable cause to arrest defendant because he was gambling illegally on the street. Thus, whether Forbes lacked the subjective intent to arrest defendant for gambling upon initiating the encounter is inconsequential. See *id.*; see also *Kolichman*, 218 Ill. App. 3d at 139. Any lack of intent to arrest does not invalidate the search that Forbes performed prior to arresting defendant because probable cause existed independent of Forbes's discovery of the firearm. See *Little*, 322 Ill. App. 3d at 612. Based on the foregoing, we find that the court did not err in denying defendant's motion to quash arrest and suppress evidence.

¶ 27    Having found that probable cause existed to arrest defendant, we do not reach his arguments regarding whether the stop was justified under *Terry*, whether the subsequent search was justified as a *Terry* frisk, and whether Forbes exceeded the permissible bounds of a *Terry* frisk by manipulating the content of the bag.

¶ 28    Defendant next argues that the State's evidence was insufficient to establish that he knowingly possessed the firearm.

¶ 29    On a challenge to the sufficiency of the evidence, the reviewing court construes all the evidence in the light most favorable to the State and determines whether any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Murray*, 2019 IL 123289, ¶ 19. All reasonable inferences are drawn in favor of the State. *People v. Newton*, 2018

IL 122958, ¶ 24. Additionally, the reviewing court will not substitute its judgment for that of the factfinder on questions regarding the weight of evidence or witness credibility. *People v. Hardman*, 2017 IL 121453, ¶ 37. A conviction should be reversed only where the evidence is so "unreasonable, improbable, or unsatisfactory" that it creates reasonable doubt of the defendant's guilt. *Newton*, 2018 IL 122958, ¶ 24.

¶ 30     To establish UUWF, the State must show that a defendant previously convicted of a felony knowingly possessed a firearm. 720 ILCS 5/24-1.1(a) (West 2018). Defendant here challenges the sufficiency of the State's evidence regarding knowing possession.

¶ 31     Knowing possession can be actual or constructive. *People v. Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39. To demonstrate actual possession, the State must prove that the defendant exercised "immediate and exclusive dominion or control" over an item. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Where possession is established, "an inference of culpable knowledge can be drawn from the surrounding facts and circumstances." *Id.* Possession and knowledge are both factual determinations to be made by the factfinder. *People v. Miller*, 2018 IL App (1st) 152967, ¶ 9.

¶ 32     Here, as discussed, the court found that defendant had the bag containing the firearm around his shoulder at the time Forbes approached. Forbes further testified that upon seeing the officers, defendant had a panicked look on his face, turned the bag away from the view of the officers, walked away from the group, and refused to obey instructions. In finding defendant guilty, the court referenced defendant's panicked look and shifting of the bag as suggesting defendant knew the bag's content.

¶ 33    Based on this record, we find that a rational factfinder could have found that defendant knowingly possessed the firearm. First, though defendant argues that he lacked constructive possession of the bag based on his testimony that it was on the porch, we defer to the trial court's determination on this matter of credibility and will analyze this matter accordingly. See *Hardman*, 2017 IL 121453, ¶ 37. Thus, actual possession analysis is appropriate because we must credit Forbes's testimony that the bag was around defendant's shoulder. Based on this testimony, defendant exercised immediate dominion and control over the bag. Additionally, the surrounding facts and circumstances would permit a rational factfinder to infer that defendant knew the bag's content. There was no dispute that the only item in the bag was the firearm, and Forbes testified that the bag was heavy and he immediately recognized the bag contained a firearm upon touching it. Additionally, as the court referenced, defendant secreted the bag from the officers' view as they approached, walked away from the group, and failed to obey Forbes's initial orders to stop. A rational factfinder could view these facts as supporting the inference that defendant knew the bag contained contraband and thus did not want the officers to discover its content.

¶ 34                                III. CONCLUSION

¶ 35    For the foregoing reasons, defendant's conviction is affirmed.

¶ 36    Affirmed.

---

**No. 1-19-1095**

---

| | |
|---|---|
| **Cite as:** | *People v. White*, 2021 IL App (1st) 191095 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-9587; the Hon. Vincent M. Gaughan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Lari A. Dierks and Gretchen Harris Sperry, of Hinshaw & Culbertson LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Ashlee Cuza, Assistant State's Attorneys, of counsel), for the People. |

---