2024 IL App (1st) 221651

No. 1-22-1651

Opinion filed September 20, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 6294 |
| | ) | |
| CARLOS CRUMPTON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Carlos Crumpton appeals his conviction for unlawful use of weapons (720 ILCS 5/24-1(a)(7)(i) (West 2022)).[1] The principal issue on appeal is whether the State proved that Crumpton constructively possessed a firearm beyond a reasonable doubt. We conclude that the State did not present sufficient evidence to meet its burden of proof. Accordingly, we reverse.

---

[1] Crumpton was initially convicted of a second count of aggravated unlawful use of a weapon; however, during the pendency of this appeal, the trial court issued a corrected mittimus in this case "to reflect one conviction and sentence of six years for Count 1 (Class X UUW) and no conviction or sentence for Count 2 (Class 4 AUUW)."

¶ 2                                    I. BACKGROUND

¶ 3     Crumpton was charged with unlawful use of weapons and aggravated unlawful use of a weapon stemming from a traffic stop. At trial, the State presented the testimony of Chicago Police Officers Vega and Garcia, who had been patrolling the Englewood neighborhood of the City of Chicago shortly after midnight on the morning of April 9, 2021. During their patrol, the officers encountered a Ford four-door sedan with five occupants, including Crumpton, who was sitting in the passenger seat, stopped at a stop sign. Officers Vega and Garcia pulled alongside the sedan in their patrol vehicle. Both officers testified that they observed that the three occupants in the back seat of the sedan were not wearing seatbelts in violation of Illinois law. 625 ILCS 5/12-603.1(a) (West 2022). Officer Garcia, who was in the passenger seat of the patrol car, claimed to notice Crumpton look over at the police vehicle and become wide-eyed. Neither officer indicated that they saw any other nervous behavior from the sedan's occupants.

¶ 4     After the sedan drove through the intersection, Officer Vega pulled behind the car and activated his emergency lights and siren, which caused the dashboard camera in the patrol vehicle to automatically begin recording. As the sedan began to pull over, Officer Vega stated "someone just moved real quick." Both officers Garcia and Vega testified that they saw Crumpton drop down quickly and then pop back up. However, on the night of the stop, Officer Garcia did not communicate to the other officers that he had seen any movement, and no movement can be seen in the dashboard camera video.

¶ 5     Once the sedan had stopped on the side of the road, the officers exited their vehicle and approached. They did not observe any further movement as they advanced on either side of the car, but they did notice a strong order of burnt and raw cannabis. The officers handcuffed the

occupants of the sedan and placed them toward the rear of the car while they conducted a narcotics investigation. All of the occupants cooperated during the search. Officer Garcia then investigated the passenger area of the sedan. There was no contraband in plain view, even when the seat was pushed back. However, when Officer Garcia looked under the seat, he discovered a handgun with the barrel facing forward. Officer Garcia testified that, by his estimation, the gun was closer to the front of the passenger seat than the back, and there was a bottle in the space behind the gun. Officer Garcia retrieved the gun and placed it in the patrol vehicle. Crumpton presented no evidence in his defense, and the jury convicted him on both counts.

¶ 6     Crumpton filed a post-trial motion, arguing that the State presented insufficient evidence to support his conviction. The circuit court denied the motion, reasoning:

> "This may have been something where the result may have been different had there been a bench trial in this matter. Your client wanted a jury trial. So now the question is simply is it so unreasonable and unfathomable for the jury to have found your client guilty based on the evidence they heard.
>
> Even though I may have ruled differently had this been a bench trial. I cannot say as a matter of law that the jury abused their discretion or that the verdict was against the manifest weight of the evidence."

This timely appeal followed. Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024).

¶ 7                                 II. ANALYSIS

¶ 8     Crumpton argues that the State failed to meet its burden of proving beyond a reasonable doubt that he constructively possessed the firearm discovered beneath his seat. In particular,

Crumpton argues that the meager evidence tying him to the firearm and the fact that there were four other occupants in the car renders the State's evidence insufficient to sustain his conviction.

¶ 9     It is the role of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, "[w]hen presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). Accordingly, we will only reverse a criminal conviction for insufficient evidence if "the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.* However, the question is not whether this court believes that the evidence at trial failed to establish the defendant's guilt beyond a reasonable doubt; the inquiry for a reviewing court is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson*, 443 U.S. at 319.

¶ 10    In essence, the issue in this case is whether Crumpton knowingly possessed a weapon illegally. Possession can be either actual or constructive. *Givens*, 237 Ill. 2d at 335. That is, it occurs either where "a person exercises immediate and exclusive dominion or control over the illicit material" (*Id.* at 335) or a person "has knowledge of the presence of the weapon and exercises immediate and exclusive control over the area where the firearm is found" (*People v. Wise*, 2021 IL 125392, ¶ 25).

¶ 11    To demonstrate that a person had knowledge of the presence of a weapon, the State must do more than simply show that the person was an occupant of the vehicle in which the weapon was found. "A defendant's mere presence in a car, without more, is not evidence that he knows a

weapon is in the car." *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). Instead, a defendant's knowledge can be inferred from a variety of factors including "(1) the visibility of the weapon from defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon." *Id.* at 892. "Courts should also consider any other relevant circumstantial evidence of knowledge, including whether the defendant had a possessory or ownership interest in the weapon or in the automobile in which the weapon was found." *Id.*

¶ 12    The evidence in this case is insufficient to support the inference that Crumpton had knowledge of the firearm. Most of the *Bailey* factors militate against a finding of knowledge. There is no evidence tying Crumpton to the weapon. The officers never saw Crumpton holding or carrying a gun. No DNA or fingerprints were taken from the gun. The gun was not registered to Crumpton. And Crumpton was not the owner of the car in which the gun was found. Officer Garcia testified that the gun was not visible without looking directly underneath the passenger seat, even after he had moved the seat back. The State also presented no evidence that Crumpton had an adequate amount of time to discover the gun beneath his seat before the car was pulled over. And the fact that the firearm was relatively small is further evidence that Crumpton would not necessarily have seen it beneath his seat or discovered it at any point.

¶ 13    In these ways, this case is virtually indistinguishable from *Bailey*. There, Bailey's conviction for possession of a handgun was reversed where the gun could not be seen without looking under the passenger seat, there were no fingerprints taken from the gun, and neither the gun nor the car in which it was found were owned by Bailey. *Id*. The court concluded that "the

State failed to produce any affirmative evidence, either circumstantial or direct, to establish that Bailey had knowledge of the presence of the weapon under his seat." *Id.* However, in *Bailey*, "[n]either Officer Powers nor Officer Prochaska testified to seeing Bailey make any gestures that indicated he was trying to retrieve or hide the weapon." *Id.* Here, the arresting officers testified,

> "I saw the defendant drop forward toward the floorboard and then all of a sudden pop back up. So it would have been something where he leaned forward like this and then all of a sudden just came back up."

Alone, this additional fact is insufficient to sustain a conviction.

¶ 14    The State's evidence amounts to the testimony of two officers that, just after midnight, they were able to see through three backseat passengers that Crumpton moved toward the floor of the sedan. The dashboard camera video of the incident corroborates their testimony only so far as one of the officers can be heard saying that "someone just moved real quick." The video itself shows no movement. Accepting the officers' testimony proves only the inconclusive fact that Crumpton bent over and sat back up. This situation substantially differs from other constructive possession cases where convictions were affirmed because police were able to see defendants make movements toward the location where a gun was hidden. In *People v. Nesbit*, the police observed, while approaching a stationary car with the door open, the defendant repeatedly reach toward the floor, where a firearm was later found in plain view. 398 Ill. App. 3d 200, 210 (2010). In *In re L.P.*, the police saw defendant "placing both of his hands underneath the front passenger seat of the vehicle." (Internal quotation marks omitted.) 2017 IL App (1st) 162732-U, ¶ 5. In contrast, here, the police noticed movement from a distance, and their view was obstructed by the sedan

and the backseat passengers. They could not see where Crumpton was reaching or even whether he was reaching for anything at all.

¶ 15    Moreover, *Nesbit* and *L.P.* involved additional facts beyond the defendants' movements that tended to establish the defendants' knowledge of the illicit firearm. See 398 Ill. App. 3d at 213 (noting that the defendant was "the sole occupant of a small car" and that "[t]he gun was visible to the police officers once the car stopped"); 2017 IL App (1st) 162732-U, ¶ 19 ("In addition, Oppedisano testified that after respondent was directed to display his hands, he did not immediately comply with the request."). Here, there is *no other evidence* to support the conclusion that Crumpton knew that there was a firearm in the car. The reliance on the testimony that Crumpton moved, as well as the fact that Officer Garcia saw Crumpton give the patrol car a "wide-eyed look," is also concerning because "although nervousness does weigh in favor of a finding of knowledge, it is not in and of itself sufficient to uphold such a finding." *People v. Ortiz*, 196 Ill. 2d 236, 266-67 (2001).

¶ 16    Additionally, Crumpton was not alone in the car. The gun could have been placed under Crumpton's seat by one of the backseat passengers or on a prior occasion. See *People v. Gore*, 115 Ill. App. 3d 1054, 1058 (1983) (determining that, in a car with three occupants, "evidence is lacking the defendant was any more in possession of the contraband than the passengers in the car or for that matter the owner of the car"). The likelihood of one of these alternatives is further evidenced by the fact that the gun was found with the barrel facing forward. In either scenario, there is no evidence to suggest that Crumpton knew about the gun.

¶ 17    These facts distinguish Crumpton's case from similar constructive possession cases where we affirmed defendants' convictions. See *People v. Ross*, 2019 IL App (1st) 162341, ¶ 32 (holding

that the defendant was not prejudiced when he alleged ineffective assistance of counsel where, in addition to "making furtive bending movements toward the floor of the van," the defendant also fled from the police and the gun that was found was "large and not covered by anything"); *People v. Ingram*, 389 Ill. App. 3d 897, 900-01 (2009) (determining that the State sufficiently proved that the defendant constructively possessed a firearm when the gun was within easy reach of the defendant, in plain view, and relatively large, and the defendant fled from the police and gave a false name); *People v. Mallett*, 2023 IL App (1st) 220920, ¶ 66-67 (concluding that the facts that the defendant owned and was driving the car and that defendant had sole possession of the key that could open the glove compartment was sufficient evidence to demonstrate that defendant knew that there was a firearm in the glove compartment); *People v. Hilson*, 2023 IL App (5th) 220047, ¶ 59 (holding that the evidence was sufficient to prove constructive possession where the defendant was driving the vehicle where the firearm was found, the gun was only accessible by the defendant, the defendant initially refused to exit the vehicle and keep his hands out of the window as instructed, and defendant's DNA was on the gun); *People v. Mosley*, 2023 IL App (1st) 200309, ¶ 21 (determining that the State presented sufficient evidence where the officer "from a few feet away, *** saw defendant remove a black object from his waistband and place it on the floorboard of the rear passenger seat" and that the police then recovered a firearm from the floor of the rear passenger area). An observation—in the dark and from a distance—of movement toward the floor of a car, standing alone, is insufficient to prove beyond a reasonable doubt that a person knew that a gun was beneath his seat. There must be something more that connects the defendant to the gun.

¶ 18    We do not set aside a jury's verdict lightly. The right to a jury trial is "of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the

right has always been and should be scrutinized with the utmost care." (Internal quotation marks omitted.) *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024). For this reason, juries are "entitled to respect and deference, and a reviewing court will not invade the function of the jury and substitute its judgment for the jury's." *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 1011 (2003). But our deference to a jury's verdict has an outer limit: sufficiency of the evidence. When no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," it is the duty of this court to reverse. *Jackson*, 443 U.S. at 319. Such is the case here.

¶ 19                                    III. CONCLUSION

¶ 20     For the foregoing reasons, Crumpton's judgment of conviction is reversed.

¶ 21     Reversed.

*People v. Carlos Crumpton*, 2024 IL App (1st) 221651

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CR-6294; the Hon. James B. Linn, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, State Appellate Defender, of Chicago (Douglas R. Hoff, Deputy Defender, Hannah Lazar Pieterse, Assistant Appellate Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Su Wang, and Kimberly C. Reeve, Assistant State's Attorneys, of counsel), for the People. |