2024 IL App (2d) 240496-U
No. 2-24-0496
Order filed November 26, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1313 |
| | ) ) | Honorable |
| ELOY D. CONTRERAS, | ) ) | Salvatore LoPiccolo, Jr., David Paul Kliment, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's factual determinations about knowledge and possession were not against the manifest weight of the evidence.

¶ 2   Defendant, Eloy D. Contreras, appeals, under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), the order of the circuit court of Kane County denying pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/art. 110 (West 2022)), commonly known as the Pretrial Fairness Act. Defendant argues that the State failed to meet its evidentiary burden of demonstrating that the proof was evident or the presumption great that defendant

committed the charged offenses and of proving that he posed a real and present threat to the community. We affirm.

¶ 3                            I. BACKGROUND

¶ 4      On June 21, 2024, defendant was charged with the detainable offenses of unlawful possession of a firearm in a vehicle by a street gang member (720 ILCS 5/24-1.8(a)(2) (West 2022)), unlawful possession of firearm ammunition in a vehicle by a street gang member (*id.*), unlawful possession of a firearm without a firearm owner's identification card (430 ILCS 65/2(a)(1) (West 2022)), and four counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2022)). The same day, the State timely filed a verified petition to deny defendant's pretrial release (petition to detain), and the trial court held a hearing on it.

¶ 5      At the hearing, the State proceeded by way of proffer. According to the State, on April 30, 2024, defendant was arrested on an outstanding warrant for a De Kalb County domestic battery case. At the time of the April 30 arrest, defendant possessed methamphetamine, and he was charged with nondetainable drug offenses in Kane County case No. 24-CF-953 (methamphetamine case), and defendant raised a factual issue regarding whether his nonattendance at subsequent hearings was willful, bearing on the issue of conditions of release.

¶ 6      The State also presented defendant's criminal and social history noting that, although defendant was 18 years of age, he had a criminal conviction for residential burglary and a juvenile adjudication for burglary. At the time of the detention hearing, defendant had three pending cases: the De Kalb County domestic battery case, the methamphetamine case, and an unspecified drug case, and defendant was on probation for his residential burglary conviction. Defendant also admitted that he was a member of the Latin Kings street gang in Aurora.

¶ 7      Regarding the instant case, the State admitted into evidence a police synopsis of the encounter leading to defendant's arrest. At about 8 p.m., on June 20, 2024, Investigators Walden

and Meyers of the Aurora police department conducted a traffic stop for improper lane usage of the vehicle in which defendant was traveling, and the vehicle turned into a parking lot. Fausto Fuentes was the driver, defendant was the front-seat passenger, and an unnamed person was seated in the rear driver's-side seat.

¶ 8    When Meyers approached the passenger side of the vehicle, he smelled the odor of cannabis. Defendant showed Meyers a glass bowl and admitted that he smoked cannabis with it about an hour before the stop. Defendant also showed Meyers an open bottle of tequila within the car. The officers had the occupants exit the car. Meyers searched defendant and found a small amount of cannabis on defendant's person. Meyers's conversation with defendant at the scene resulted in defendant's admission that he was a Latin King.

¶ 9    When Walden approached the driver's side of the vehicle, Fuentes admitted that he did not have a valid driver's license, which Walden confirmed. Walden discovered a glass pipe consistent with methamphetamine use on Fuentes's person.

¶ 10    Meyers conducted a search of the vehicle. Under the front passenger seat, Meyers found a loaded handmade handgun without a serial number (*i.e.*, a ghost gun) containing nine rounds of 9 mm ammunition in the magazine in the handgun, but no round was loaded in the chamber. Meyers also determined that the ghost gun could not have been placed under the seat from behind, only from the front.

¶ 11    The occupants were taken to the Aurora police department booking facility. Fuentes agreed to be interviewed. He stated that while the car was pulling into the parking lot, he saw defendant lean forward as if he were placing something under his seat. Contreras refused to be interviewed at the station.

¶ 12    The State also argued that defendant posed a real and present threat to the community, demonstrated "based on the nature of [the] offenses and the fact that this was a loaded gun, driving

around at the time of day and night with an open tequila bottle. He also had drugs again in this case with the gun."

¶ 13    Defendant argued that there was no evidence, beyond his proximity to it in the vehicle, that he knew of the presence of the ghost gun. Defendant argued that the ghost gun likely belonged to Fuentes because he was the driver of the vehicle, who, due to his offenses, had a strong motive to lie about the ownership of the ghost gun. Defendant also disputed that the gun could not have been placed under the front passenger seat from the rear and noted that no objective evidence, like fingerprints or DNA, linked defendant to the gun. Defendant concluded that the evidence was insufficient to demonstrate that he "was aware of the firearm" for purposes of constructive possession.

¶ 14    Defendant also argued that the State failed to prove, by clear and convincing evidence, that he posed a real and present threat to the safety of the community, because there was no evidence that he brandished the gun, threatened anyone with the gun, there was no round in the chamber, no evidence that the gun had ever been fired, and no evidence that defendant had any identified enemies. Defendant also argued that the synopsis was self-contradictory, because it claimed that he admitted belonging to the Latin King street gang, yet it also claimed he refused to speak with police officers.

¶ 15    The trial court granted the State's petition to detain. In pronouncing its judgment,[1] the court found that the proof was evident or the presumption great that defendant committed the charged firearm-possession offenses. Regarding the charges of possession by a street gang member, the court relied on defendant's at-the-scene admission of being a member of the Latin King street gang, the configuration of the front passenger seat, and Fuentes observing defendant

---

[1]The trial court's written judgment was consistent with its oral pronouncement.

lean forward and place an object under the seat. Regarding the other firearm charges, the court relied on the facts that defendant was 19 years old at the time of the traffic stop and ineligible by law from owning a handgun or obtaining either a firearm owner's identification card or a concealed carry license. Additionally, the court noted that defendant was on probation on a Kendall County residential burglary and took judicial notice of the conditions that prohibited him from obtaining a firearm owner's identification card.

¶ 16 The court also rejected defendant's arguments on the ground that they were based on whether the charges could be proved beyond a reasonable doubt. The court agreed that, on the record before it, the proof did not rise to the level of beyond a reasonable doubt. Nevertheless, the court

"believe[d] that based on the location, the officer's statement that the only way [the gun] could have been placed [under the front passenger's seat] was from the front and more importantly the defendant—driver of the vehicle who tells the officer he observes, so this is immediately before they are being pulled over for the traffic violation, he observed the defendant bend down as if to put something under the front seat and that's where the firearm is located."

¶ 17 Turning to the threat defendant posed to the community, the trial court relied on the facts that, as a 19-year-old, defendant was not allowed to own a handgun, or to possess a firearm owner's identification card or a concealed carry license, and it stated the age restriction was due to the "built-in immaturity of an 18- or 19-year-old" in possessing a handgun. The court further noted that defendant admitted to being a gang member. The court then analyzed the specific circumstances of the case to find that defendant posed a real and present threat to the community:

"[Defendant] is a self-admitted gang member and they are driving around on the streets of Aurora with—at a time where he is not supposed to have a gun, period, put on top of it the

- 5 -

fact that it is a firearm that does not have a serial number so it can't even be tracked, can't even be tracked, combined with the fact that [defendant] is on TASC probation for residential burglary at the time that this occurs, combined with the fact that he is not to be consuming any intoxicating substances, by his own admission he is smoking cannabis at the time of the officer coming up—an hour before the officer comes up to him. Again, while he was on probation, that TASC probation, he is arrested on April 30th of this year and has methamphetamine, so again there is another violation of the order of [probation]."

¶ 18    The trial court also determined that no conditions of release would mitigate the threat posed by defendant, because his violations of the terms of probation for his residential burglary conviction and failures to appear at court hearings showed that electronic home monitoring or other conditions would not prevent defendant from possessing a firearm or intoxicating substances. Based on its considerations, the court granted the State's petition to detain defendant pending trial.

¶ 19    On June 24, 2024, defendant filed a motion styled as a motion for relief, challenging the sufficiency of the evidence regarding firearm-possession offenses, whether he posed a real and present threat to the community, and whether there were no conditions available that could mitigate the threat he posed. On July 17, 2024, the court held a hearing on defendant's motion for relief. Defendant proceeded by way of proffer and submitted into evidence two supplemental police reports from the Aurora police department. The first report indicated that the firearm had been subjected to several forms of fingerprint testing, and no comparable prints were found.

¶ 20    The second report focused on Fuentes's interrogation following his arrest. This report identified the back-seat occupant as Yoni Rodriguez, whom Fuentes did not know. Fuentes was driving a car belonging to a friend from Streator, where Fuentes lived, but Fuentes frequently visited friends in Aurora. He was flagged down by defendant, whom Fuentes had known for six months, and asked to give them a ride to the library. Fuentes stated that, as he was pulling into the

library, he was pulled over by the police. As he turned into the library parking lot, Fuentes noticed defendant reach under the front passenger seat and hide something. Fuentes did not see what defendant placed under the seat. Once the police search had recovered the ghost gun from beneath the front passenger seat, Fuentes concluded that it must have been the item defendant was hiding. Fuentes also stated that, during his association with defendant, he had not observed defendant carrying guns, had never seen defendant with a gun, and did not know that defendant had a gun in his possession when he entered Fuentes's vehicle.

¶ 21　The trial court denied defendant's motion. Defendant clarified to the court that his motion was not a "motion for relief" as contemplated by the Supreme Court Rules but was simply a motion to reconsider defendant's continued detention. Defendant asked that the motion be continued to the following week and represented that the motion would be further supplemented.

¶ 22　On July 25, 2024, defendant filed a motion styled as an amended motion for relief, raising the same issues as in the June motion. In the amended motion for relief, however, defendant incorporated the arguments made at the July 17 hearing regarding the supplemental police reports. On July 25, 2024, the trial court held a hearing on the amended motion for relief. Defendant stood on his written arguments in the amended motion and on the oral arguments from the previous week. The trial court denied the amended motion for relief, and defendant timely appeals. Both defendant and the State filed memoranda in support of their positions.

¶ 23　　　　　　　　　　　　　　II. ANALYSIS

¶ 24　On appeal, defendant argues that the trial court abused its discretion in granting the State's petition to detain. In support, defendant argues that the trial court's findings that the State proved, by clear and convincing evidence, that the proof was evident or the presumption great that defendant committed the charged offenses, and that defendant posed a real and present threat to the community, were against the manifest weight of the evidence. Specifically, regarding the

firearm charges, defendant argues that the State did not demonstrate that he constructively possessed the ghost gun because the evidence did not demonstrate that he was aware of the gun's presence in the vehicle. Regarding the threat to the community, defendant argues that the trial court based its determination on the general nature of the charged offenses, not on any specific and articulable facts appearing in the record. We address defendant's contentions in turn.

¶ 25 We initially note that our review of these contentions proceeds under a bifurcated standard of review. We review the trial court's factual findings to determine whether they are against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. We review the court's ultimate determination for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. A court abuses its discretion if its decision is arbitrary, fanciful, or unreasonable, or if no reasonable person would agree with the court's decision. *Id.* In addition, we may sustain the court's judgment on any ground supported in the record even if the court did not rely on it or employed incorrect reasoning in reaching its result. *People v. Johnson*, 208 Ill. 2d 118, 129 (2003).

¶ 26 Defendant first argues that the State failed to prove by clear and convincing evidence that he possessed the firearm, either actually or constructively. To demonstrate actual possession, the State was required to show that the contraband was in the immediate and exclusive control of the defendant. *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). By contrast, to demonstrate constructive possession, the State was required to show that the defendant knew the contraband was present and exercised immediate and exclusive control over the area where the contraband was located. *People v. Jones*, 2023 IL 127810, ¶ 30. Possession and knowledge present factual determinations to be made by the factfinder, and they may be demonstrated by circumstantial

evidence and proper inferences arising from the evidence. *People v. White*, 2021 IL App (1st) 191095, ¶ 31.

¶ 27 Here, the State presented evidence that defendant was seated in the front passenger seat. As the police effected a traffic stop, Fuentes saw defendant lean forward and place something under the seat. A search of the vehicle revealed the presence of the ghost gun under the defendant's seat. The gun was loaded with a nine-round magazine, although no round was chambered when the gun was discovered. Further investigation showed that the configuration of the front seat made it impossible to place the gun under the front passenger seat from behind; it could only have been placed there by reaching under the front passenger seat from in front of that seat.

¶ 28 The trial court concluded, that, based on this evidence, the State had demonstrated, by clear and convincing evidence, that defendant knowingly possessed the firearm. The evidence showed that defendant himself placed the ghost gun, thereby demonstrating knowledge and awareness of the gun, and its location under the front passenger seat afforded defendant immediate and exclusive possession of the gun. Thus, the court's conclusion is based on the evidence presented at the hearing on the State's petition to detain and defendant's motion for relief, and it amply supports its factual determination. Therefore, we cannot say that the trial court abused its discretion.

¶ 29 Defendant relies on *People v. Crumpton*, 2024 IL App (1st) 221651, in support of his contention that the State failed to prove, by clear and convincing evidence, that he had knowledge of the presence of the ghost gun. As an initial matter, *Crumpton* involved whether the evidence proved beyond a reasonable doubt that the defendant in that case constructively possessed a firearm found beneath his seat in an automobile. *Id.* ¶ 8. Here, by contrast, the State needed only to demonstrate possession and knowledge by clear and convincing evidence, an intermediate quantum of proof lying between a preponderance and beyond a reasonable doubt. *E.g.*, *People v. Clay*, 361 Ill. App. 3d 310, 322 (2005). While the analyses pertaining to the evidentiary burdens

may be similar, the vast difference between the evidentiary burdens renders *Crumpton* distinguishable on its face.

¶ 30    Moreover, in *Crumpton*, there was no objective evidence tying the defendant to the firearm, such as direct observation of possession by another, fingerprints or DNA evidence. *Crumpton*, 2024 IL App (1st) 221651, ¶ 12. There was also no evidence presented that suggested the defendant knew or could have discovered the presence of the relatively small gun under his seat at any time before the car was stopped. *Id.* Here, by contrast, Fuentes told officers that he saw defendant lean forward as he was turning into the parking lot and place something beneath the front passenger seat. Meyers's search of the vehicle and examination of the configuration of the front passenger seat showed that the gun could not have been placed as found by anyone sitting behind the front seat. Thus, there is evidence tying defendant to the ghost gun recovered from Fuentes's vehicle, namely, defendant's leaning forward and the front seat configuration. This evidence amply supports the trial court's factual determination that defendant both possessed and knew of the presence of the gun, because he placed it beneath his seat. For these reasons, too, *Crumpton* is distinguishable and affords defendant no support for his contention.

¶ 31    Defendant disputes various details of the offense. For example, defendant labels Fuentes's statements to the police as unreliable because he was driving without a valid driver's license and possessed methamphetamine paraphernalia, which incentivized Fuentes to lie about ownership of the gun and his observations of defendant's actions. While these points were argued at the hearings below, it was still the trial court's province to evaluate the evidence, resolve discrepancies and inconsistencies, and otherwise make the necessary factual determinations. *White*, 2021 IL App (1st) 191095, ¶ 31. Defendant's contentions about any inconsistencies or conflicts in the evidence presented by the State at the original hearing, or inconsistencies and conflicts in evidence between the original hearing the hearing on defendant's motion for reconsideration/relief amount to little

more than a plea that we reweigh the evidence and substitute our judgment for that of the trial court, and that we may not do. *People v. Smith*, 2024 IL App (2d) 240168, ¶ 20. Rather, because the evidence in the record amply supports the trial court's factual determinations concerning possession and knowledge, we reject defendant's arguments about how the court should have interpreted the evidence and drawn its inferences and conclusions.

¶ 32    Next, defendant argues that the trial court's determination that he presented a real and present threat to the community was against the manifest weight of the evidence. Defendant argues that the trial court based its determination of threat or dangerousness on the fact that he possessed a firearm and was a self-admitted gang member. Defendant emphasizes that he had no criminal history of firearm use or possession, and he concludes that nothing in the record suggests that he poses a threat to the community. We disagree.

¶ 33    Defendant's criminal history demonstrates an escalation in the severity and frequency of offenses over several years and particularly during 2024. Defendant had a juvenile adjudication for burglary, and he was on probation for a residential burglary conviction at the time he incurred the charges in this case. In addition, defendant had been arrested on an outstanding domestic battery warrant from De Kalb County which resulted in being charged with possession of methamphetamine, both of which occurred in April 2024. The circumstances of the instant case, occurring in June 2024, indicate that defendant was riding in a car near dusk in Aurora, where he admitted he was a member of the Latin King street gang, while in possession of an untraceable, fully loaded, ghost gun. In addition, defendant admitted to smoking cannabis about an hour before the stop, and to the possession of an open bottle of tequila in the car. These facts lead to the inference that he was consuming alcohol while he and his companions were driving around the streets of Aurora as dusk was falling, and it cannot be seriously argued that mixing firearms with alcohol consumption does not pose a serious danger. Thus, defendant's possession of a fully

loaded and untraceable ghost gun while under the influence of multiple intoxicants are circumstances highly endangering the community standing alone. These circumstances combined with the escalating type and frequency of defendant's criminal charges strongly support the trial court's determination that he constituted a real and present threat to the community. Accordingly, we cannot say that the court's finding of dangerousness was against the manifest weight of the evidence.

¶ 34    We do not address the issue of conditions of release, even though they were addressed in defendant's motion for relief. Defendant submitted a memorandum in support of his appeal of his detention which included no argument about conditions of release, and this memorandum controls and serves to limit the issues we will consider on appeal. *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22.

¶ 35    Finally, to the extent that defendant separately argues on appeal that the trial court abused its discretion in granting the State's petition to detain, we disagree. The trial court's decision was neither unreasonable, fanciful, nor arbitrary, and it was solidly based on the evidence presented at the hearings. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. Accordingly, we cannot say that the court abused its discretion in granting the State's petition to detain.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 38    Affirmed.